# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Robinson*, 2013 IL App (2d) 120087**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEXTER G. ROBINSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0087 |
| Filed | August 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for knowingly failing to report a change of address to his local police department as required by section 6 of the Sex Offender Registration Act was reversed where the State failed to present evidence sufficient to establish a specific unregistered address where defendant stayed for an aggregate period of five or more days in a calendar year. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-3318; the Hon. Allen M. Anderson, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Thomas A. Lilien and R. Christopher White, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Kathryn E. Kohls, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1 Following a bench trial, the circuit court of Kane County convicted defendant, Dexter G. Robinson, of violating section 6 of the Sex Offender Registration Act (Act) (730 ILCS 150/6 (West 2008)), holding that defendant, a sex offender, had knowingly failed to report a change in his address to the Aurora police department. Defendant appeals, contending that the State's proof was insufficient because it failed to present evidence of a specific unregistered address where defendant stayed for an aggregate period of five or more days in a calendar year. We agree and reverse.

¶ 2 I. BACKGROUND

¶ 3 On October 16, 2008, Richard Cornforth, who registers sex offenders for the Aurora police department, met with defendant and completed a registration form with him. Defendant gave an address on Crestwood Drive in Aurora. The reverse side of the form listed the requirements of registration, including a requirement that defendant report a change of address within three days. Defendant wrote his initials next to each of these requirements. Subsequently, in 2009, defendant did not report a change of address or register a new address.

¶ 4 On October 16, 2009, Aurora police officer Laura Kolanowski completed a sex offender registration form with defendant, who again provided his address on Crestwood Drive, Aurora. Defendant then read and initialed each line of the form that listed his rights and responsibilities.

¶ 5 On November 22, 2009, Aurora police officer Maxwell Worchester went to the Crestwood Drive address and attempted to verify the information defendant provided on the October 16, 2009, form. Officer Worchester spoke with defendant's grandfather, Tommy Lee Rush, the owner of the house. Rush provided a written report stating that defendant had not lived with him since August 2009 and was working near Davenport, Iowa, at a telemarketing firm. Officer Worchester did not speak with anyone else at the house or call either contact

number listed on the form.

¶ 6    At trial, Rush testified that police officers came to his house in 2009 looking for defendant, but he could not remember the date. In November 2009, defendant lived at the house "off and on" and his absences could be longer than a week but shorter than a month. Rush did not know where defendant was during these absences, but he knew that defendant stayed with Rush's son sometimes and possibly had a job in the Davenport area. During this time, defendant kept his belongings at Rush's house, and Rush did not recall telling police on November 22, 2009, that defendant did not have any belongings at his house. Rush admitted that he gets "mixed up" and could not remember the November 22 meeting with the police.

¶ 7    Aurora police officer Laurie Pekich testified that at approximately 11:25 a.m., on November 22, 2009, she received a call while she was working at the front desk of the police station. The caller identified himself as defendant, and he said that he had been advised that police were looking for him at his home. He told her that he sometimes left the area for two or three days and was on his way back to Illinois.

¶ 8    Brandi O'Banner, defendant's sister, testified that she lived at the Crestwood Drive address with her family, including defendant. They all lived there on November 22, 2009, and defendant came home every night and kept his clothes and toiletries there. Her grandfather slept in the back of the house and was often asleep before defendant came home. Defendant would spend a day or two, once or twice a month, at his girlfriend's house, but was never gone as long as a week.

¶ 9    The trial court determined that Rush was credible and found defendant guilty. The trial court stated that it had no reasonable doubt that defendant was away from his home for an aggregate period of five or more days during a calendar year. Defendant timely appeals.

¶ 10                                II. ANALYSIS

¶ 11    On appeal, defendant argues that the evidence was insufficient to sustain a conviction under section 6 of the Act and, more specifically, that the State failed to prove the existence of a specific address that defendant was required to register. When a defendant challenges the sufficiency of the evidence in a criminal case, it is not the function of a reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, the proper standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When reviewing the evidence, the reviewing court will not substitute its judgment for that of the trier of fact on issues concerning the weight of the evidence or the credibility of the witnesses. *People v. Phelps*, 211 Ill. 2d 1, 7 (2004). Where the evidence is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt (*People v. Ehlert*, 211 Ill. 2d 192, 203 (2004)), or where proof of an element is wholly lacking (*e.g.*, *People v. Murdock*, 321 Ill. App. 3d 175, 177 (2001)), the reviewing court may reverse a conviction (*id.*).

¶ 12    Defendant first argues that there are five elements the State was required to prove under

section 6 of the Act: (1) defendant had been adjudicated to be sexually dangerous or is a sexually violent person; and (2) he failed to register; (3) in person; (4) within three days; (5) of establishing a new "fixed residence" or "temporary domicile." 730 ILCS 150/6 (West 2008).

¶ 13    We do not agree with defendant that a conviction of a violation of section 6 requires proof that the defendant was previously adjudicated as sexually dangerous or is a sexually violent person. Although the statute first addresses sexually dangerous and sexually violent persons, it goes on to state:

> "If any other person required to register under this Article changes his or her residence address, *** he or she shall report in person, to the law enforcement agency with whom he or she last registered *** his or her new address ***." *Id.*

As defendant conceded in oral argument, section 6 applies to anyone required to register under the Act, not only to sexually dangerous or sexually violent persons. A person is required to register under the Act if he is a sex offender, meaning that he has been convicted of a sex offense as defined by section 2 of the Act (730 ILCS 150/2 (West 2008)), which lists the various qualifying offenses. 730 ILCS 150/3 (West 2008).

¶ 14    Thus, to prove a violation of the duty to report a change of address, the State was required to prove that defendant: (1) was previously convicted of an offense subjecting him to the Act; and (2) established a new "fixed residence" or "temporary domicile"; (3) which he knowingly failed to report in person to the law enforcement agency with whom he last registered. 730 ILCS 150/6 (West 2008); see *People v. Harris*, 333 Ill. App. 3d 741, 745 (2002) (citing 730 ILCS 150/6 (West 2000)) (to sustain a conviction under section 6, the State was required to prove: (1) defendant was previously convicted of aggravated criminal sexual assault; (2) defendant changed his residence address; and (3) defendant failed to report the change; (4) in writing to the Chicago police department; (5) within 10 days of the change). Although both parties contend that reporting must be done within three days, the statute does not establish a time period. However, we need not address this issue, as we dispose of this case on other grounds.

¶ 15    With respect to the established elements, defendant argues that evidence is lacking to sustain his conviction beyond a reasonable doubt on elements (1) (eligibility) and (2) (residence). Regarding the first element, defendant argues that the State failed to present any evidence that he was convicted of an offense requiring compliance with the Act. However, defendant makes only a conclusory assertion with respect to the first element and fails to develop any supporting argument until his reply brief. In other words, defendant does not develop this argument until the reply brief, where he argues that People's Exhibit No. 1, by which the State purported to show his qualifying conviction, was insufficient because it was not a certified copy of the conviction. No authority is cited for this proposition. Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) requires that the appellant's brief include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Further, arguments raised for the first time in a reply brief are deemed forfeited. *People ex rel. Village of Vernon Hills v. Village of Lincolnshire*, 283 Ill. App. 3d 266, 271 (1996). Although defendant's

argument might have merit, an appellant must present clearly defined issues to the court, supported by relevant authority: this court is "not simply a repository in which appellants may dump the burden of argument and research." *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005). Because defendant fails to make any argument to support his contention in the original brief, and fails to cite any authority to support his new argument in the reply brief, defendant has forfeited his contention.

¶ 16        Even if defendant had not forfeited this argument, there would be no way for us to review whether People's Exhibit No. 1 was sufficient to prove defendant's prior conviction, because the exhibit included in the record is not what the parties represent it to be, and, apparently, neither party has reviewed the record in its entirety. As a result, defendant has failed to provide a record from which we could decide this issue, as we explain. In their briefs, both the State and defendant reference People's Exhibit No. 1 from the trial, yet neither party has ensured that People's Exhibit No. 1 from the trial is part of the record. Instead, the exhibit provided appears to be from the sentencing hearing, rather than the trial, and there is nothing in the record to demonstrate that the two exhibits were the same. An appellant is responsible for providing a record that shows the errors claimed. *People v. Hamilton*, 64 Ill. App. 3d 276, 278 (1978). Where the record is incomplete, a reviewing court will presume that the trial court ruled or acted correctly. *Id.* As the appellant, defendant had the burden of providing a complete record. As the record is incomplete, we presume that the trial court acted correctly in accepting the exhibit offered at trial as adequate proof of defendant's prior conviction. *Id.* Furthermore, we note that there was no objection to the exhibit at trial, and, in fact, defendant's motion *in limine* requested that the State's Attorney be precluded from presenting evidence of his prior conviction of "Criminal Sexual Assault," a conviction that apparently subjected defendant to the registration requirements of the Act. See 730 ILCS 150/2 (West 2008) (listing qualifying offenses).

¶ 17        With respect to element (2), defendant makes two arguments. Defendant first argues that the State offered no evidence establishing that his "fixed residence" did not remain the Crestwood Drive address. Second, defendant argues that the State failed to prove that any other location he visited constituted a "fixed residence."

¶ 18        In response to defendant's first argument, the State asserts that a person can be required to register multiple addresses under the Act, and directs us to the Act's language defining a "fixed residence" as "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." 730 ILCS 150/2(I) (West 2008); see *People v. Peterson*, 404 Ill. App. 3d 145, 154 (2010). The State is correct, and defendant concedes, that the clear language of section 2(I) allows for registration of multiple addresses. Thus, the fact that the Crestwood Drive address may have been defendant's "fixed residence" does not preclude that defendant had another "fixed residence," at a different address, that would trigger registration requirements. We reject defendant's first argument with respect to element (2).

¶ 19        In response to defendant's second argument, the State avers that from the evidence of defendant's absences, including the testimony of Rush and O'Banner, it can be reasonably inferred that he had established another "fixed residence." The State further argues that it was not required to prove the specific amount of time that defendant resided at the new address.

¶ 20    A defendant's change of address and the amount of time he resided at the new address are elements of the offense of failing to register pursuant to section 6 of the Act. *Harris*, 333 Ill. App. 3d at 752. In *People v. Evans*, 365 Ill. App. 3d 374 (2006), we upheld a conviction of failing to register within 10 days of establishing a residence (730 ILCS 150/6 (West 2002)). There, the State presented evidence that on October 26, 2003, the defendant was released from jail and moved in with his girlfriend at 805½ W. Third Street in Dixon, but did not register that address until December 8, 2003. *Evans*, 365 Ill. App. 3d at 376. The apartment manager, who lived next door to the defendant's girlfriend, testified that, during this period, defendant was at the address " 'all of the time' " and "every evening." *Id.* The State further presented testimony from police officers who were informed by the defendant himself that he was living in Dixon at 805½ W. Third Street and needed to register. Defendant was also stopped on multiple occasions by police and, on each occasion, his address was listed as 805½ W. Third Street on citations he was issued. *Id.*

¶ 21    Here, the only satisfactory evidence presented was regarding defendant's *absence* from his registered Crestwood Drive address, whereas in *Evans* the State presented competent evidence regarding the defendant's *presence* at an unregistered address. *Evans* supports defendant's position that a conviction under section 6 required the State to prove a specific location that defendant was required to register. *Id.* at 376-77. Although in *Evans* we did not require the State to prove the exact number of days at which the defendant stayed at an unregistered address, there was sufficient evidence of his presence at a *specific* location. Here, the State appears to have simply assumed that defendant violated section 6, rather than meeting its affirmative obligation to investigate the charge. The record lacks evidence of any specific address at which defendant stayed for an aggregate period of five days or more, let alone any specific amount of time he stayed at various locations.

¶ 22    The evidence, viewed in the light most favorable to the prosecution, shows that (1) defendant was away from the Crestwood Drive address for more than five days, and (2) defendant was at "his girlfriend's house" two nights a month. The State offered no evidence of a lease with defendant's name, the city or street where defendant stayed, his phone records, his girlfriend's name, or even that "his girlfriend" referred to only one person and was the same person he stayed with each time. Lacking, other than the vague reference to "his girlfriend's house," is evidence of defendant's specific location when he was away from the Crestwood Drive address. While we allow *reasonable* inferences from the record in favor of the judgment, the quantum of proof here is insufficient to support an inference that defendant was at one specific address, for the requisite period of time. As the Act allows for the possibility that a registered offender will "game" the system by residing at multiple addresses while away from his registered address, the State had the burden to prove that he was at one location for the requisite period. Here, the lack of any solid evidence of defendant's whereabouts when he was away from his Crestwood Drive address is so unsatisfactory that it gives rise to a reasonable doubt of defendant's guilt. While we can envision a scenario where the proof of a defendant's stay at a girlfriend's house would be sufficient, it is not so here.

¶ 23    Under the Act, a "fixed residence" is defined as "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year" (730 ILCS 150/2

(West 2008)), while a "temporary domicile" is "any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year"[1] (730 ILCS 150/3 (West 2008)). Inherent in each definition is the idea of a specific location. See *Peterson*, 404 Ill. App. 3d at 152 (defining "fixed residence," "place of residence," and "temporary domicile" all as "*places* an offender stays [for a certain amount of time] in a calendar year" (emphasis added)). The State did not prove that defendant had a "fixed residence" or a "temporary domicile" other than his Aurora address. Instead, the State concentrated on proof that defendant was away from his Aurora address and present at some other place, requiring multiple inferences to fit this other place into the definition of a "fixed residence" or a "temporary domicile." The State would have us begin with evidence that defendant was away from his Aurora address and the vague statement that he was at his girlfriend's house, and then infer the rest of the elements: both "girlfriend" and "girlfriend's house" are singular; his stay was at least five aggregate days in one year; O'Banner's basis of knowledge was sufficient to testify as to defendant's whereabouts; and so on until we would affirm defendant's conviction, not because the State proved him guilty beyond a reasonable doubt, but because the State proved that he was absent from his registered address beyond a reasonable doubt. This is indeed what the State proved at trial, evidenced by the trial court's statement that it was convinced beyond a reasonable doubt that defendant was away from his home for the requisite period. However, this did not violate section 6 of the Act. The State failed to prove that defendant established another "fixed residence" or "temporary domicile" that he was obligated to register under section 6, because it offered unsatisfactory evidence that defendant was at a specific place for the requisite period. Accordingly, because proof of an essential element of the offense was wanting, no reasonable fact finder could have found this element of the offense beyond a reasonable doubt, and defendant's conviction must be reversed.

¶ 24                                III. CONCLUSION

¶ 25        Accordingly, for the foregoing reasons, we reverse defendant's conviction.

¶ 26        Reversed.

---

[1]While we note the discrepancy in the amount of time triggering a registration requirement depending on whether an address is defined as a "fixed residence" or a "temporary domicile," both parties have used "fixed residence" throughout their briefs, and for the purposes of this argument we assume that the State intended to show that defendant had established a "fixed residence." Nevertheless, because the State did not present evidence showing a specific location, it also failed to prove that defendant was at any "temporary domicile" for the requisite three days.

-7-