# Illinois Official Reports

## Appellate Court

***People v. Brock*, 2015 IL App (1st) 133404**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL BROCK, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-13-3404 |
| Filed | November 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-14169; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Reversed in part; affirmed in part; vacated in part; remanded for resentencing. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Deepa Punjabi, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Liu and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial in the circuit court of Cook County, defendant Paul Brock was found guilty of failure to report in person within 90 days of his last date of registry and failure to report his change of address within 3 days as a registered sex offender in violation of the Sex Offender Registration Act (Act) (730 ILCS 150/6 (West 2012)), and sentenced as a mandatory Class X offender to six years of imprisonment. On appeal, the defendant contends that: (1) the evidence was insufficient to establish that he violated either provision of the Act; and (2) the trial court committed reversible error when it used his prior criminal conviction for aggravated criminal sexual assault as both an enhancement in sentencing him as a Class X offender and as an element of the charged offense, resulting in an improper double enhancement. For the following reasons, we affirm in part, reverse in part, and vacate in part the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3    The defendant was charged by indictment for failure to comply with the Act "on or about April 19, 2012 and continuing on through July 3, 2012" in that "having been previously convicted of aggravated criminal sexual assault under case number 94CR1711801," the defendant (1) "knowingly failed to report, in person, to the law enforcement agency with whom he last registered *** [90] days from the date of such registration and every [90] days thereafter *** in violation of chapter 730 Act 150 section 6 of the Illinois Compiled Statutes 1992," and (2) "changed his address and knowingly failed to report, in writing, to the law enforcement agency with whom he last registered *** within three days of such change of address, *** in violation of chapter 730 Act 150 section 6 of the Illinois Compiled Statutes 1992." The indictment further charged that "the State shall seek to sentence [defendant] as a Class 2 offender because [he] was previously convicted of failure to register as a sex offender under case number 04CR2354101."

¶ 4    The State's evidence at trial showed that the defendant initially registered with the Chicago police department as a sex offender on January 19, 2012. Officer Cipun testified that during the defendant's initial registration, defendant provided a state identification card that listed his address as 952 West 58th Street, Apartment 2, Chicago, Illinois. The defendant was informed, *inter alia*, that he must renew his registration every 90 days, that he must notify the police department in person of any change in address within three days of changing such address, and that his registration renewal date was April 18, 2012. The State introduced into evidence the defendant's initial registration form, which is dated January 19, 2012 and contains his signature at the bottom of each page and his initials next to its various provisions. A copy of the state identification card he provided to officers during the January 19, 2012 registration was also admitted into evidence.

¶ 5    On cross-examination, Officer Cipun testified that in accordance with the "logs" kept by the Chicago police department's registration unit, the defendant appeared in person to renew his registration on April 18, 2012. However, because the defendant "did not have proof of address that is required by state law for registration," he was unable to complete the registration process.

¶ 6    Officer Bell testified that on June 12, 2012, he was performing sex offender registration checks and went to 952 West 58th Street in search of the defendant. Officer Bell stated that

he did not see the defendant's name on any of the mailboxes and knocked on every single door, but was unable to locate him.

¶ 7 Officer West testified that on July 3, 2012, he went to 11550 South Perry Avenue in Chicago to perform follow-up investigations on investigative alerts within his district. Officer West located the defendant at this address and asked for identification. The defendant produced a state identification card bearing the name and picture of the defendant and listed his address as 11550 South Perry Avenue. Officer West then placed the defendant under arrest.

¶ 8 On July 4, 2012, Detective Dubose conducted a custodial interview with defendant. During the interview, the defendant confirmed that he moved to his current address, 11550 South Perry Avenue, in April 2012. On cross-examination, Detective Dubose acknowledged that the defendant told him during the interview that he was unable to register on April 20, 2012, because he could not pay the $100 registration fee. The State then presented a certified copy of the defendant's December 12, 1996 conviction for aggravated criminal sexual assault under case number 94 CR 1711801. The State then rested.

¶ 9 The defendant testified on his own behalf that he reported to the registration office on April 18, 2012, but was turned away because the identification he provided did not list his current address. He also testified that on April 20, 2012, he returned to the police station and attempted to register with his new state identification card, but was unable to do so because he could not pay the registration fee. The defendant stated that the police department gave him a two-month grace period to pay the fee, but he was unable to obtain the money and was subsequently arrested on June 30, 2012, released, and then arrested again on July 1, 2012 for failure to pay the registration fee. The defendant did not appear at the police station to register after April 20, 2012.

¶ 10 The trial court found the defendant guilty on both counts. During sentencing, the State argued that the defendant was subject to Class X sentencing due to his two prior felonies: a 1994 conviction for aggravated criminal sexual assault (which was introduced by the State into evidence during trial and cited in the indictment), and a 1984 conviction for indecent liberties with a child. The trial court ultimately sentenced the defendant to the minimum six years of imprisonment under the Class X sentencing scheme. The defendant's timely appeal follows.

¶ 11 ANALYSIS

¶ 12 The defendant first contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt because he fulfilled his duty to report under section 6 of the Act when he appeared at the police station on April 18, 2012 and again two days later on April 20, 2012. In response, the State argues the evidence was sufficient because the section 6 reporting requirement also requires registration, and the evidence established that the defendant was unable to register.

¶ 13 Although the defendant phrases his contention as an evidentiary argument, the parties' arguments raise an issue of statutory construction. Consequently, in order to determine whether the evidence was sufficient to establish the defendant's guilt, we must first determine what reporting or registration duties are required by section 6 of the Act.

¶ 14 The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Hanna*, 207 Ill. 2d 486, 497 (2003); *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. The best evidence of legislative intent is the language of the statute which will be given its plain and ordinary meaning. *People v. Tucker*, 167 Ill. 2d 431, 435 (1995); *People v. Bole*, 155 Ill. 2d 188, 197 (1993). Statutes are read as a whole, so that interpretation of a statute's language does not render any part meaningless or superfluous, and its words and phrases are construed in light of other relevant provisions of the statute. *People v. Ellis*, 199 Ill. 2d 28, 39 (2002); *In re Detention of Stranbridge*, 2012 IL 112337, ¶ 70. Issues of statutory construction are reviewed *de novo*. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996).

¶ 15 The Act imposes two separate requirements on individuals who are subject to its provisions. See 730 ILCS 150/1 *et seq*. (West 2012). The first, outlined in section 3 of the Act, imposes a general duty to register on all sex offenders. 730 ILCS 150/3 (West 2012). The second, outlined in section 6 of the Act, is the duty to report. 730 ILCS 150/6 (West 2012). The defendant argues that section 6 mandates only a reporting requirement. The State, however, argues that the statute requires "registrants to do more than simply appear at the registration office," and, thus, where the "indictment states that defendant knowingly failed to report in person, it means that he failed to complete his registration requirements."

¶ 16 The section of the statute under which defendant was charged specifically refers to individuals currently or previously deemed sexually dangerous (see 725 ILCS 205/1.01 (West 2012)) or sexually violent persons (see 725 ILCS 207/5(f) (West 2012)) and outlines additional reporting and registration requirements (such as a duty to report in person every 90 days) which do not appear under the section 3 general duty to register that is imposed on all sex offenders and sexual predators. See 730 ILCS 150/3, 6 (West 2012). The statute, therefore, imposes a separate and additional duty on those sex offenders specifically adjudicated "dangerous" or "violent," and it is clear from the language of the statute that the legislature intended to distinguish a duty to report that does not simply duplicate the registration requirement.

¶ 17 For example, section 6 states, "[i]f any other person required to register under this Article changes his or her residence address *** he or she shall *report* in person, to the law enforcement agency with whom he or she last registered *** *and register*, in person, with the appropriate law enforcement agency within the time period specified in Section 3." (Emphases added.) 730 ILCS 150/6 (West 2012). If the duty to report necessarily encompassed the duty to register, the change of address provision requiring a "report in person" would render the "register in person" clause superfluous. See *In re Detention of Stranbridge*, 2012 IL 112337, ¶ 70 ("[w]e must also avoid rendering any part [of the statute] meaningless or superfluous"). The language of the statute clearly distinguishes "report" and "register" and when it requires one, or both, it does so by expressly stating such requirement.

¶ 18 The statute defines registration, in part, as "a statement in writing signed by the person giving the information that is required by the Department of State Police." 730 ILCS 150/8(a) (West 2012). Therefore, in order to complete the registration process, a signed writing must be generated. Although report is not specifically defined in the Act, The American Heritage College Dictionary defines "report" as "to relate or tell about; to make or present an often official, formal, or regular account of." The American Heritage College Dictionary 1158 (3d ed. 1992). Therefore, although related, one can "report" without

registering, but may not "register" without reporting, because registration requires the creation of a signed writing.

¶ 19 Having construed the language of the statute, we turn now to the question of whether the defendant violated its provisions. Accordingly, we will address each count of the indictment in turn.

¶ 20 When a defendant challenges the sufficiency of the evidence to sustain his conviction, the relevant question on review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A conviction will only be overturned where the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8.

¶ 21 In order to sustain a conviction under section 6 of the Act, the State must generally prove that (1) defendant was subject to the reporting requirements under the Act, and (2) defendant knowingly failed to report in person at the requisite reporting agency. See 730 ILCS 150/6 (West 2012). This section further provides several manners in which a defendant may violate the in-person reporting provision including, in relevant part, (1) the failure to report in person within 90 days of the date of his last registration and/or (2) failure to report in person and register a change of address within three days of such change. *Id.*

¶ 22 The defendant first argues that the evidence was insufficient to establish his guilt of failure to report in person within 90 days where the evidence at trial established that he appeared in person at the police station on the ninetieth day as required but was unable to register due to lack of appropriate identification. The State's argument at trial was identical to that on appeal–that the defendant violated the statute because he failed to complete a registration on the ninetieth day.

¶ 23 With regard to count I, section 6 mandates that any person deemed sexually dangerous or violent, must "*report* in person *** no later than 90 days after the date of his or her last registration and every 90 days thereafter." (Emphasis added.) *Id.* The indictment alleged that the defendant violated this provision on April 19, 2012 and continuously until July 3, 2012, when he knowingly failed to report in person within 90 days.

¶ 24 Notably, this provision of the statute does *not* mention a registration requirement. As such, the defendant may satisfy his duty simply by reporting–and the evidence clearly established that the defendant's actions were sufficient to satisfy the reporting requirement. Here, the defendant appeared in person at the Chicago police department on April 18, 2012, the ninetieth day after his initial registration, spoke with the registration officer, and provided a formal account of his whereabouts and other information in an attempt to register. A log was created by the Chicago police registration office memorializing the defendant's appearance despite the defendant being turned away by the police without "registering" because he lacked the appropriate identification. Under these facts, we hold that no rational trier of fact could conclude that the defendant failed to *report in person* within 90 days within the meaning of the statute, and we therefore reverse the defendant's conviction with regard to count I.

¶ 25 The defendant next argues that the evidence was insufficient to establish his guilt as charged under count II of the indictment for failure to report his change of address within three days of the date of such change.

¶ 26    The indictment charging defendant with the failure to report his change of address alleged that the defendant "committed the offense of violation of the Sex Offender Registration Act in that he, having been previously convicted of aggravated criminal sexual assault under case number 94CR1711801, changed his address and knowingly failed to report, in writing, to the law enforcement agency with whom he last registered *** within three days of such change of address, *** in violation of chapter 730 Act 150 section 6 of the Illinois Compiled Statutes."

¶ 27    Notably, Public Act 94-166 (Pub. Act 94-166, § 5 (eff. Jan. 1, 2006) (amending 730 ILCS 150/6 (West 2004))) replaced the writing requirement with in-person, thus it appears the defendant was indicted under an outdated version of the statute.[1] Although we note a potential deficiency in the charging instrument, this issue has been forfeited[2] and, thus, we turn to the relevant question of whether the defendant's conduct violated the statute in effect at the time of the commission of the alleged offense.

¶ 28    Section 6 states, "[i]f any other person required to register under this Article changes his or her residence address *** he or she shall *report* in person, to the law enforcement agency with whom he or she last registered *** *and register*, in person, with the appropriate law enforcement agency within the time period specified in Section 3." (Emphases added.) 730 ILCS 150/6 (West 2012). Accordingly, the defendant violated section 6 of the Act if he failed to report and register, in person, his change of address within three days of the date he obtained a new residence.

¶ 29    The State presented Detective Dubose's testimony that the defendant admitted that he moved in April 2012. In addition, evidence showed that the defendant's last registration was completed on January 19, 2012, and by the time of his arrest on July 3, 2012, the defendant had not registered his new address. The State also produced evidence that on June 12, 2012, nearly two months *after* the defendant's registration timeline expired, Officer Bell reported to the defendant's previous address in search of him and was unable to locate the defendant on the premises. It was not until follow-up investigations were conducted by Officer West on July 3, 2012, that the defendant was located at his new address and subsequently arrested for violation of the Act. Therefore, his duty to report and register his change of address was not fulfilled, and we uphold his conviction under count II.

¶ 30    The defendant testified that after being turned away for lack of identification on April 18, 2012, he returned two days later on April 20, 2012, with identification that contained his new address but was turned away a second time because he lacked the required registration fee. However, the trier of fact was not obligated to believe the defendant's statement. See *People*

---

[1]Although we determined the registration requirement under this provision requires a signed writing, a distinction can be made between "report in writing" and the current language of the statute. Although the result is the same (a writing is generated), the former frustrates the intent of the statute because it arguably could be satisfied by mailing a letter or document without an in-person appearance.

[2]Defendant did not raise a challenge to the charging instrument either before or during trial or on appeal and has not shown prejudice; therefore, the issue is forfeited. See *People v. Long*, 55 Ill. App. 3d 764, 771 (1977) (formal defect in indictment waived if timely challenge not made); *People v. Sanchez*, 329 Ill. App. 3d 59, 68 (2002) (issues not argued in appellate brief deemed waived); *People v. Phillips*, 215 Ill. 2d 554, 562 (2005) (defendant must show indictment prejudiced defendant in preparation of defense if challenged first time on appeal).

*v. Evans*, 209 Ill. 2d 194, 211 (2004). Furthermore, that statement does not help the defendant since he did not return to attempt registration after April 20, 2012. Additionally, the defendant cannot point to a log by the registration office or any signed writing generated as a result of his alleged in person appearance on April 20, 2012 that would satisfy the registration requirement under section 6. In so finding, we leave for another day the question of whether a fee must be paid in order to register within the meaning of section 6 and, if so, what effect the alleged inability to pay has on compliance with the statute. In this case, the question of whether the defendant had the required fee necessary to register was not the crux of the statutory violation.[3] As such, we cannot find the evidence to be so improbable that no rational trier of fact could have found the defendant guilty of knowingly failing to report and register his change of address within three days of such change, in clear violation of section 6 of the Act.

¶ 31      Nonetheless, the defendant argues that the indictment did not allege that he failed to provide acceptable proof of address, a requirement found under section 3(c)(5) of the Act and, thus, this requirement should not be construed as an additional element under section 6 of the Act. We reject this contention. As noted, section 6 states that whenever a person who is "required to register" under the Act changes his residence, he shall *report* and *register* in person with the appropriate law enforcement agency within the time period specified under section 3. See 730 ILCS 150/6 (West 2012). Registration of a change of address entails producing "positive identification and documentation that substantiates proof of residence at the registering address," as set forth under section 3 (730 ILCS 150/3(c)(5) (West 2012)), which we must read together with section 6 as requiring the defendant to show positive proof of his new residence at 11550 South Perry Avenue. See *In re Detention of Stranbridge*, 2012 IL 112337, ¶ 70; *Ellis*, 199 Ill. 2d at 39 (statutes are read as a whole, so that interpretation of the language does not render any part meaningless or superfluous, and the words and phrases are construed in light of other relevant provisions of the statute).

¶ 32      The defendant contends that, even had the proof of address requirement been alleged in the indictment, the State failed to prove that he did not meet this requirement. Pointing to Officer Cipun's testimony, in which she stated that the defendant could not complete his registration on April 18, 2012 because he "did not have proof of address that is required by state law for registration," the defendant argues that Officer Cipun failed to provide any details regarding what kind of proof the defendant did or did not produce to the registration office on April 18, 2012, or what she understood the requirements to be under the Act. Viewing the evidence in the light most favorable to the State, the court, as the trier of fact, was in the best position to observe the witnesses' demeanor, determine their credibility, and weigh the evidence. It was within the province of the trier of fact to find Officer Cipun credible, and we will not disturb that determination on appeal. Further, at trial, the defendant admitted that he did not have his identification card bearing the new address when he appeared at the registration office on April 18, 2012. Thus, we conclude that a reasonable

---

[3]Under the Act, "[t]he law enforcement agency having jurisdiction may waive the registration fee if it determines that the person is indigent and unable to pay the registration fee." 730 ILCS 150/3(c)(6) (West 2012). We note that the defendant here made no further effort to explain his alleged lack of registration fee nor additional attempt to register after being turned away on April 20, 2012.

trier of fact could have found that he lacked the documentation needed to satisfy the proof of address requirement under the Act.

¶ 33    The defendant next argues that even assuming that he had provided an identification card bearing his old address when he was turned away on April 18, 2012, the State still failed to show that he violated the Act. Specifically, he argues that because a sex offender must report in person and register a change of address within three days of such change, the State failed to establish when he moved and when the three-day clock began running. He points out that the State's evidence only showed that he informed Detective Dubose during the police interview that he moved to his new residence in "April 2012." From there, he argues that he plausibly could have moved to the new address on April 17, one day before he reported in person on April 18, and that his identification card bearing the old address could still have been valid because the three-day window for him to register his new address had yet to expire. Thus, he contends, the State failed to provide any satisfactory evidence that the police had a legal basis to turn him away when he reported in person on April 18, 2012. We find this argument to be unpersuasive, as it ignores the fact that the indictment alleged that the defendant failed to timely register his change in address in violation of the Act "on or about April 19, 2012 and continuing on through July 3, 2012." Even assuming the defendant had moved to the new address on April 17, 2012, there is no indication that the defendant ever returned to the registration office to register his new address at any time after the three-day window had passed and before he was arrested on July 3, 2012.

¶ 34    Likewise, we reject the defendant's argument that, instead of turning him away on April 18, 2012, the police at the registration office should have registered him as someone who lacked a "fixed residence" and required him to report in person on a weekly basis under section 6 of the Act. In support, the defendant cites *People v. Wlecke*, 2014 IL App (1st) 112467, in which the defendant was convicted of failing to register as a sex offender based on his failure to comply with the weekly reporting requirement while lacking a fixed residence under section 6 of the Act. In *Wlecke*, the defendant timely reported to the registration office to register as a sex offender within three days of being released from a correctional facility, presented a temporary Illinois Department of Corrections (IDOC) identification card listing the Veterans' Administration (VA) Hospital as his address, but was turned away by Officer Meaders under the erroneous belief that the temporary IDOC identification card could not be used to register the defendant. *Id.* ¶ 10. Instead, Officer Meaders wrote the defendant's name in a log, but did not document where he was staying or inform him that he was required to report weekly until he had satisfactory proof of residence. *Id.* Six days later, the defendant was arrested for failure to register as a sex offender and was later convicted of failing to report weekly to the police department while lacking a fixed residence under section 6 of the Act. *Id.* ¶¶ 11, 15. In reversing his conviction, this court found that a residential treatment facility like the VA Hospital can be considered a "fixed residence" under the Act; that nothing in the Act precluded the defendant from presenting the temporary IDOC identification card as sufficient proof of residence; and that even if the IDOC card was not valid proof of residence, the defendant should have been registered as an offender lacking a "fixed residence" that required weekly reporting so that he would not have been in violation of the Act less than a week later–six days–when he was arrested. *Id.* ¶¶ 26, 28, 38. We find *Wlecke* to be distinguishable from the case at bar, where here, the issue was not whether the defendant produced a valid form of identification card, but whether the

information on the identification card contained the new address that the defendant was attempting to report and register. As noted, the defendant admitted at trial that he did not produce an identification card bearing the new address when he appeared at the registration office on April 18, 2012. One purpose of the registration requirement is to advise the authorities of a convicted sex offender's whereabouts. That purpose would be frustrated if the defendant's argument is accepted. Thus, because the defendant admittedly had a fixed residence[4] within the meaning of the Act but failed to produce an identification card evidencing the new fixed residence, we reject the defendant's red herring argument that the registration office should have somehow registered him anyway as lacking a fixed residence under the Act.

¶ 35 In sum, the defendant satisfied his 90-day reporting requirement by appearing in person at the police station on April 18, 2012, and his conviction under count I is reversed. However, his conviction is affirmed under count II with regard to his failure to report his change of address because he failed to register his new address within three days of such change.

¶ 36 The second issue on appeal is whether the defendant's prior conviction for aggravated criminal sexual assault was improperly used as both an element of the offense and as a basis for imposing a mandatory Class X sentence, thus resulting in an improper double enhancement.

¶ 37 An improper double enhancement occurs, absent the legislature's clear expression of its intention to enhance the penalty based upon an aspect of the crime, when (1) a single factor is used as either both an element of the offense and as a basis for imposing a harsher sentence, or (2) the same factor is used twice to elevate the severity of the offense itself. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 232 (2009); *People v. Phelps*, 211 Ill. 2d 1, 15 (2004). The defendant claims he has suffered double enhancement of the first kind, arguing that his prior conviction for aggravated criminal sexual assault was an element of the instant offense and was also used as one of the two prior felonies to impose Class X sentencing on a Class 2 offense.

¶ 38 The defendant was charged with violating section 6 of the Act, in that having previously been convicted of aggravated criminal sexual assault under case number 94 CR 1711801, he changed his address but failed to report such change within the time period specified. 730 ILCS 150/6 (West 2012). The Act states that "[a]ny person who is convicted for a violation of this Act for a second or subsequent time is guilty of a Class 2 felony." 730 ILCS 150/10(a) (West 2012). The defendant was eligible to be sentenced as a Class 2 offender because he was previously convicted of failure to register under case number 04 CR 2354101, making the instant conviction a subsequent violation of the Act. He was also found to be eligible for Class X sentencing pursuant to section 5-4.5-95(b) of the Unified Code of Corrections, which requires a defendant convicted of a Class 2 felony to be sentenced as a Class X offender if he or she was previously convicted of two separately tried offenses of Class 2 felony or greater. See 730 ILCS 5/5-4.5-95(b) (West 2012). The defendant's qualifying convictions were indecent liberties with a child and aggravated criminal sexual assault.

---

[4]"Fixed residence" is defined as "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year" under the Act. 730 ILCS 150/2(I) (West 2012).

¶ 39    As stated above, the defendant argues that his conviction for aggravated criminal sexual assault was improperly used twice: once as an element of the instant offense and again as one of the two prior felonies for Class X sentencing. Based upon the facts of the present case, this court's opinion in *People v. Hall*, 2014 IL App (1st) 122868, controls.

¶ 40    In *Hall*, as in the present case, the defendant was charged with failure to report under section 6 of the Act. *Id.* ¶ 2. The record revealed that the defendant had only two prior felony convictions–one for driving under the influence of alcohol and another for aggravated criminal sexual assault. The *Hall* court rejected outright the State's argument that the defendant's prior conviction for aggravated criminal sexual assault was not improperly used to enhance the charge and the sentence, where his aggravated sexual assault conviction was used as the basis for establishing defendant was subject to the Act's reporting requirements (*i.e.*, as an element of the offense) and as one of the two prior felonies required to sentence the defendant as a Class X offender. *Id.* ¶ 14.

¶ 41    Likewise, the defendant in the present case had only two prior felony convictions–one for aggravated criminal sexual assault and a second for indecent liberties with a child. The indictment listed defendant's prior conviction for aggravated criminal sexual assault as the basis for establishing his duty to comply with the Act. This conviction was also necessarily used as one of his two prior felony convictions to mandate Class X sentencing. Therefore, in accordance with *Hall*, the defendant's sentence was improper.

¶ 42    Nonetheless, the State argues that *Hall* was wrongly decided because his conviction for aggravated criminal sexual assault was used as a manner of establishing that the defendant was subject to the Act's reporting requirements but is not an element of the offense itself, and was therefore not improper double enhancement. However, the *Hall* court expressly concluded that establishing a defendant's duty to register under the Act is an element of the offense of failure to report. *Id.* As such, the State has failed to provide a compelling basis that requires this court to deviate from our decision in *Hall*. Accordingly, we vacate the sentence and remand the cause for resentencing. See *id.* ¶ 13.

¶ 43    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed with regard to the defendant's conviction for failure to report within 90 days under count I, affirmed with regard to the defendant's conviction under count II for failure to report and register his new address within three days of changing his address, and the defendant's sentence is vacated and the cause remanded for resentencing.

¶ 44    Reversed in part; affirmed in part; vacated in part; remanded for resentencing.