# Illinois Official Reports

## Appellate Court

---

### *People v. Kindelspire*, 2018 IL App (3d) 150803

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON T. KINDELSPIRE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0803 |
| Filed | October 24, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 14-CF-37; the Hon. Lance R. Peterson, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Dimitri Golfis, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jason Helland, State's Attorney, of Morris (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1    The defendant, Brandon T. Kindelspire, was convicted of failing to comply with his duty to report as a sex offender (730 ILCS 150/6 (West 2014)) and was sentenced to seven days in jail and 30 months of probation. On appeal, Kindelspire argues that the State failed to prove an essential element of the crime beyond a reasonable doubt—namely, that the State did not prove that he had established a new address. We reverse.

## I. BACKGROUND

¶ 3    On March 19, 2014, Kindelspire was charged by indictment with two counts of the failure to comply with his duty to report as a sex offender (*id.*). Count I alleged that Kindelspire "failed to notify *** the Chief of Police of Morris *** within three days after leaving his established residence in Morris." Count II alleged that Kindelspire "failed to notify *** the Chief of Police of Mazon *** within three days after he established his residence in Mazon."

¶ 4    At the first appearance on March 18, 2014, the prosecutor stated that the charges originated from a Grundy County Sheriff's Office report that Kindelspire "had changed address [*sic*] from Morris to Mazon without registering properly as a sex offender." When the court inquired about count I, the prosecutor stated that "further information shows that he did appear yesterday to register with Morris. However, that was beyond the three days from when the lease was signed at the new address in Mazon. And he also then appeared at the Grundy County sheriff's office to attempt to change and register with the county for his address in Mazon."[1]

¶ 5    At the outset of Kindelspire's bench trial on August 5, 2015, stipulated evidence was admitted that showed Kindelspire registered as a sex offender at the Morris address on January 1, 2014, and at the Mazon address on March 17, 2014. In addition, a certified copy of Kindelspire's 2008 conviction for aggravated criminal sexual abuse was admitted into evidence without objection.

¶ 6    During his opening statement, the prosecutor stated that the State's theory was that Kindelspire had moved from Morris to Mazon:

"When the defendant last registered his address was 1802 Jana Lane in Morris, Illinois where his grandmother, Linda Kindelspire, resides. You will hear from her about his living arrangements. Further evidence that the State would expect to show is that the defendant did sign a lease in February of 2014 for a residence in Mazon. He did not register to that new address."

¶ 7    The evidence presented at Kindelspire's trial indicated that the police opened an investigation into Kindelspire because his fiancée, Nicole Linder, had testified in drug court on March 14, 2014, that he was living with her in Mazon. Lieutenant Todd Horrie of the Grundy County Sheriff's Department went to Kindelspire's Morris address to investigate. Horrie spoke with Linda Kindelspire, the grandmother of the defendant, who told him that she had not seen Kindelspire in a month, that he was no longer living at the Morris residence, and that he was living with his girlfriend first in Seneca and now possibly in Mazon. Horrie then went to

---

[1]We note that the duty to register and the duty to report are distinct concepts that must not be mistaken or conflated. See *id.* §§ 3, 6; *People v. Brock*, 2015 IL App (1st) 133404, ¶¶ 15-18.

the Mazon residence, where he saw Kindelspire's work truck parked in the driveway. No one answered the door for Horrie at the residence.

¶ 8    Three days later, on March 17, 2014, Kindelspire came to the Grundy County Sheriff's Department, told Horrie that he had informed the Morris police that he was moving, and said he wanted to register his address as the Mazon residence. Horrie arrested Kindelspire at that time.

¶ 9    In support of its theory of the case, the State also presented evidence that Kindelspire had set up a water and sewer account with the municipality of Mazon on January 21, 2014, in both his name and Linder's. The municipal clerk stated that an account could be set up and paid for by someone who was not living in the residence. Evidence was also presented that Kindelspire and Linder signed a lease for the Mazon residence on February 10, 2014, and that Kindelspire had been seen at the residence at various times between February and March by the landlord and a neighbor. Kindelspire's work truck had also been seen frequently at the residence.

¶ 10    Linda testified that she could not recall when Kindelspire moved out. She stated '[i]t's like I told [the police], to the best of my knowledge it could have been three months, two months or one month ago from the time that they were there. I couldn't remember." She also stated that she believed Kindelspire was still living there in March 2014. He had a room in the house, and he was mostly there only when sleeping due to his long work hours. He had some belongings there, including toiletries, books, and clothes, but not many as he was essentially living out of a backpack. She could not say if he slept there every night because some nights she went to sleep before he came back to the residence. Because he did not have a key for the residence, if he returned after she had gone to sleep, he would sleep either in the garage or in his truck. He did not have a key due to problems he had earlier in his life.[2]

¶ 11    The defense presented evidence that Linder and Kindelspire were expecting at the time of the events in question and that Linder gave birth to a son on April 11, 2014. Linder testified that she may have said in drug court that she and Kindelspire had moved to Mazon, but she meant that they were preparing to move together to live as a family. Kindelspire's name was on the lease, and the water and sewer account, because he was the sole provider. Once the lease was signed, they moved her into the residence in mid-February 2014. Kindelspire helped minimally with the move because he had been working. Most days, he was gone from sunup to sundown. Some days, she did not see him at all. She also stated that Kindelspire did not always take his work truck to a job site; he would use her car or a rental. Coworkers would pick up the truck from the Mazon residence. He had no belongings in the residence and did not stay the night there, although he would visit daily if he could. He did not move in with her until mid-March 2014.

¶ 12    Linder's sister-in-law, Rochelle, testified that she used to go help Linder when she lived at the Mazon residence. Rochelle stated that Kindelspire did not have any belongings at that residence. Linder's brother, Eric, testified that he helped Linder move into the Mazon residence and that Kindelspire did not help because he was working.

¶ 13    Kindelspire testified that he did not move to Mazon until around one week before his son was born. Prior to that time, he was at the Mazon residence quite often, but he never stayed overnight there. He worked as a construction manager for a telecommunications company and

---

[2]Kindelspire's testimony was that "[a]t a different time in my life when I was in drug court I wasn't quite trustworthy enough in [his grandmother's] eyes to leave me a key to her house."

"ran seven crews throughout the Midwest. This period specifically was from Quincy, Illinois to Lake Geneva, Wisconsin, in that area." His daily work schedule required him to be out the door at 4:30 a.m., and his return time varied but often was around 11 p.m. or midnight. He confirmed that sometimes his coworkers needed to use his work truck, so he would leave the truck at those times and use either Linder's car or a rental car.

¶ 14    Kindelspire also testified that he did not move into the Mazon residence until March due to his work schedule. He was aware that he would have three days to report to both the Morris Police Department and the Grundy County Sheriff's Department. While his long work hours would not prevent him from reporting to the Morris Police Department because they were open 24 hours, the Grundy County Sheriff's Department was only open between certain times from Monday to Friday. Thus, "[t]here was not a guarantee that I would be back in town in time for the three days while they were open."

¶ 15    He also testified that due to his work schedule, his grandmother did not know where he was for extended periods. On days that he did not return until after his grandmother had locked the house and gone to bed, he would either sleep in the garage on a cot or in his truck outside the residence.

¶ 16    In his closing argument, the prosecutor stated that there were two propositions that the State needed to prove: (1) that Kindelspire was subject to the registration requirements of the Sex Offender Registration Act and (2) "that defendant knowingly failed to report a residence change within three days." The evidence was clear that defendant "did not register an address change until March 17, 2014." The prosecutor further stated:

> "In looking at the big picture in this, it becomes clear with the evidence that the defendant's truck was there. He's got the lease. He's got the accounts. The defendant was living at that address. He knew he had to register. He hadn't gotten around to it, but as soon as the police started questioning, he tried to register, tried to remedy the situation, but it was too late."

The prosecutor also commented that Kindelspire was required to register in Mazon for the time period between February 10 and March 17, 2014.

¶ 17    The circuit court found that there was a reasonable doubt as to whether Kindelspire was living at the Mazon residence during the time period noted by the State. However, the court also found that the State had proven that Kindelspire had moved out of his grandmother's residence based on her telling the police in March that he had moved out one to three months prior. The court, however, asked the parties to provide research on whether Kindelspire could still be found guilty on count I. The court noted, "there's another way to charge it I think in the statute if you're someone without a fixed address for a temporary time you have to do certain things. I don't know if that's what Count I is."

¶ 18    The parties appeared in court again on September 10, 2015, after providing the court with research. The court stated:

> "What I need to do, did the State have to prove on the way he charged it exactly where he was living and the answer I believe is no. I'm going to find him guilty as charged. I don't think they have to prove exactly where he was living. I think they just have to prove that he had moved out of the residence he was registered at for the requisite time period under the statute."

¶ 19      Kindelspire appealed.

¶ 20                                II. ANALYSIS

¶ 21      On appeal, Kindelspire argues that the State failed to prove beyond a reasonable doubt that he violated section 6 of the Sex Offender Registration Act (Act) (730 ILCS 150/6 (West 2014)). He does not contest that he was subject to the Act's reporting requirements or that he had moved out of his Morris residence. Specifically, he contends that, contrary to the circuit court's ruling, the State was also required to prove that he had established a new address. Because that evidence was lacking, he requests that we reverse his conviction.

¶ 22      When faced with a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). To the extent that this appeal also presents a question of statutory construction, we review the circuit court's interpretation of section 6 *de novo*. *Brock*, 2015 IL App (1st) 133404, ¶ 14.

¶ 23      Section 6 of the Act, titled "Duty to report; change of address, school, or employment; duty to inform"; contains a lengthy and cumbersome description of the duty persons subject to the Act have to report, *inter alia*, their residence addresses to the appropriate agency in charge of sex offender registration. 730 ILCS 150/6 (West 2014). Despite the fact that there are several distinct ways of violating section 6's reporting requirement, the statute does not break these distinct violations into separate subsections. See *id.* For example, section 6 requires that

>      "[i]f any person required to register under this Article lacks a fixed residence or temporary domicile, he or she must notify, in person, the agency of jurisdiction of his or her last known address within 3 days after ceasing to have a fixed residence and if the offender leaves the last jurisdiction of residence, he or she, must within 3 days after leaving register in person with the new agency of jurisdiction." *Id.* (hereinafter the fixed-address provision).

Additionally, and of particular relevance to this case, section 6 also requires that

>      "[i]f any other person required to register under this Article changes his or her residence address *** he or she shall report in person, to the law enforcement agency with whom he or she last registered, his or her new address *** and register, in person, with the appropriate law enforcement agency within the time period specified in Section 3." *Id.* (hereinafter the change-of-address provision).

¶ 24      It is important to note the existence of these distinct violations of section 6 because the State has changed its theory of the case on appeal. In the circuit court, the State consistently treated Kindelspire's case as a change-of-address violation of section 6. However, for the first time on appeal, the State now argues that count I of the indictment charged Kindelspire with a violation of the fixed-address provision of section 6.

¶ 25      In this regard, we note that it is well established that the rules of waiver and forfeiture apply not only to a defendant on appeal, but also to the State. *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984); *People v. Reed*, 2016 IL App (1st) 140498, ¶ 13. Because the State never argued in the circuit court that Kindelspire violated section 6 by ceasing to have a fixed residence, the State has forfeited its argument on appeal. *Reed*, 2016 IL App (1st) 140498, ¶ 13.

¶ 26    Even if the State had not forfeited its argument, we would not have been persuaded. The indictment alleged two separate violations of section 6: (1) Kindelspire "failed to notify *** the Chief of Police of Morris *** within three days after leaving his established residence in Morris" and (2) he "failed to notify *** the Chief of Police of Mazon *** within three days after he established his residence in Mazon." The indictment contained no allegation of Kindelspire ceasing to have a fixed residence, nor did the State ever treat this case as such in the circuit court. In fact, the State's theory throughout this case below was that Kindelspire failed to register after he moved out of his Morris residence and into the Mazon residence, *i.e.*, that Kindelspire violated the change-of-address provision in section 6. At the first appearance on March 18, 2014, the prosecutor alleged that Kindelspire had changed addresses from Morris to Mazon. At trial on August 5, 2015, the prosecutor said in his opening statement that the State would provide evidence that Kindelspire had been residing in Mazon. The State's case-in-chief was centered around its allegation that Kindelspire was residing at the Mazon residence, rather than the Morris residence. There is simply no indication from the record that the State ever treated this case as a violation of the fixed-address provision. The attempt to do so now is disingenuous and raises due process concerns. See, *e.g.*, *People v. Pearse*, 2017 IL 121072, ¶ 38 (expressing, in a sex offender registration case, a concern that even after the proofs had been closed, the parties and the court were still debating "what statutory section applied, the parameters of the charge, what had to be proven, and what had been proven," and holding that "[a] defendant in a criminal prosecution has a fundamental due process right to notice of the charges against him" (emphasis omitted)).

¶ 27    Furthermore, we find the Second District's decision in *People v. Robinson*, 2013 IL App (2d) 120087, to be instructive regarding the change-of-address provision. In *Robinson*, the defendant had registered his residence in Aurora with the police department in October 2008 and October 2009. *Id.* ¶¶ 3-4. In November 2009, a police officer went to that address to verify the registration. *Id.* ¶ 5. The owner of the residence was the defendant's grandfather, who told the police officer that the defendant had moved out in August 2009 and was working near Davenport, Iowa. *Id.* The grandfather testified at trial that the defendant had been living with him off-and-on in November 2009 and that the defendant's "absences could be longer than a week but shorter than a month." *Id.* ¶ 6. The grandfather also testified that the defendant kept his belongings at the residence and that he did not recall telling the police in November 2009 that the defendant had no belongings in the house. *Id.* The defendant's sister testified that she also resided at the grandfather's house and that the defendant resided there in November 2009, kept his clothes and toiletries there, and slept there every night. *Id.* ¶ 8. She stated that the defendant often came home after the grandfather had gone to sleep and that the defendant was never gone for as long as a week. *Id.* The circuit court found the defendant guilty after finding that "it had no reasonable doubt that defendant was away from his home for an aggregate period of five or more days during a calendar year." *Id.* ¶ 9.

¶ 28    On appeal, Robinson argued that the evidence was insufficient to find him guilty because the State failed to prove the existence of a specific address that he was required to register. *Id.* ¶ 11. The Second District clarified that under section 6 of the Act

> "to prove a violation of the duty to report a change of address, the State was required to prove that defendant: (1) was previously convicted of an offense subjecting him to the Act; and (2) established a new 'fixed residence' or 'temporary domicile'; (3) which he

knowingly failed to report in person to the law enforcement agency with whom he last registered."[3] *Id.* ¶ 14.

¶ 29    Under the Act, a "fixed residence" includes "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." 730 ILCS 150/2(I) (West 2014). A "temporary domicile is defined as any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." *Id.* § 3(a). In this case, the circuit court held that the State did not have to prove that Kindelspire had established a new address, *i.e.*, a new fixed residence or temporary domicile. This was error. See *Robinson*, 2013 IL App (2d) 120087, ¶ 23.

¶ 30    Here, the circuit court found that the State failed to prove that Kindelspire had been living at the Mazon residence. Because this proof was a necessary element to prove Kindelspire guilty of violating section 6 of the Act, we hold that no reasonable fact finder could have found him guilty beyond a reasonable doubt. See *id.* Accordingly, we reverse Kindelspire's conviction.

¶ 31                                III. CONCLUSION
¶ 32    The judgment of the circuit court of Grundy County is reversed.

¶ 33    Reversed.

¶ 34    JUSTICE SCHMIDT, dissenting:
¶ 35    I respectfully dissent. In my opinion, the evidence, when viewed in the light most favorable to the State, supports the trial court's finding that defendant violated section 6 of the Act by failing to notify the Morris chief of police within three days after leaving his established residence.

¶ 36    The majority suggests that the State presented insufficient evidence to support defendant's conviction because the State never treated the case as a violation of the fixed-address provision of section 6 at trial. *Supra* ¶¶ 24-25. I disagree. Although the State primarily focused on trying to prove defendant established a new residence in Mazon, it also presented evidence to support count I of its indictment, *i.e.*, that defendant "failed to notify *** the Chief of Police of Morris *** within three days after leaving his established residence in Morris." In particular, the State presented evidence that defendant's grandmother told Grundy County sheriff's lieutenant Todd Horrie in March 2014 that defendant no longer lived with her and that he lived with his girlfriend in Seneca and then possibly Mazon. Defendant's grandmother agreed that she told officers defendant moved out of her house. She also testified that defendant did not have a key to her house and that defendant slept in his truck or in the garage if she was not awake to let him in the house. Finally, defendant testified that he did not have a key to his grandmother's home and that he basically lived out of his truck. In my view, this evidence is sufficient to support defendant's conviction.

---

[3]The *Robinson* court also cited the First District's decision in *People v. Harris*, 333 Ill. App. 3d 741, 752 (2002), for the proposition that "[a] defendant's change of address and the amount of time he resided at the new address are elements of the offense of failing to register pursuant to section 6 of the Act." *Robinson*, 2013 IL App (2d) 120087, ¶ 20.

¶ 37　　　　Further, I find defendant's reliance on *Robinson* is misplaced. The issue in that case concerned, in relevant part, whether the State presented sufficient evidence to prove the defendant violated section 6 of the Act by failing to report a change in his address. *Robinson*, 2013 IL App (2d) 120087, ¶ 11. The appellate court reversed the defendant's conviction after finding the State failed to prove a specific location that the defendant was required to register. *Id.* ¶ 22. As noted, however, one of the charges against defendant in this case alleged that defendant failed to notify the police within three days of leaving his established residence, *i.e.*, fixed residence. Thus, unlike in *Robinson*, the State did not have to prove that defendant established a new "fixed residence" or "temporary domicile" to obtain a conviction under count I of its indictment.