2020 IL App (1st) 170671-U

No. 1-17-0671

Order filed September 30, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 C6 60362 |
| | ) | |
| KEVIN HALL, | ) | The Honorable |
| | ) | Michele Pitman, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

ORDER

¶ 1     *Held*:  Postconviction counsel did not provide unreasonable assistance. This court affirmed the judgment of the circuit court and affirmed the second-stage dismissal of defendant's postconviction petition.

¶ 2     Following a jury trial, defendant Kevin Hall was found guilty of the predatory criminal

sexual assault of his 10-year-old stepdaughter, N.T., and the trial court sentenced him to 26 years

in prison. Defendant now appeals from the second-stage dismissal of his petition filed under the

Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)). He contends

postconviction counsel provided unreasonable assistance in violation of Supreme Court Rule

651(c) (eff. July 1, 2017) by failing to amend his *pro se* petition, by arguing unpled issues, and

by failing to attach affidavits or other evidence in support of his potential medical defense. We

affirm.

¶ 3                                    BACKGROUND

¶ 4        Defendant was arrested and then charged with the above-stated offense after N.T.

reported defendant had sexually abused her, and a subsequent physical exam plus circumstantial

evidence corroborated her report. The underlying facts of the case are set forth in our decision on

direct appeal and will be repeated here only briefly. The record shows that defendant's first trial

resulted in mistrial after a hung jury. Evidence at the second trial revealed that on March 3, 2006,

N.T. was home alone with her sister Ke.T. when defendant returned from work and entered the

girls' bedroom wearing only boxer shorts. Defendant directed Ke.T. to leave, then committed

anal rape against N.T., only ceasing when Ke.T. announced that her mother, Tomasenia, was

home.

¶ 5        Tomasenia then found defendant leaving N.T.'s bedroom in his boxer shorts and a t-shirt.

On encountering Tomasenia, defendant volunteered that he was not "doing anything" and that he

just "got after" N.T. for walking around naked. Tomasenia found N.T. sitting on the bed wearing

a shirt with a blanket covering her legs and tears in her eyes. Pulling the blanket back,

Tomasenia saw that N.T. was naked below the waist. Several days later, N.T. told her mother

that defendant had sexually abused her on March 3 and also on at least five prior occasions. A

subsequent doctor's exam by an expert in pediatric sexual trauma revealed N.T. had been

subjected to repeated anal sexual abuse. The exam also revealed signs and symptoms of trichomonas, a sexually transmitted infection. N.T. testified about the abuse at trial.

¶ 6    Defendant's ex-wife also told the jury about a conversation, which took place after the incident, in which defendant acknowledged having contact with N.T. on the day in question, but claimed that it was the child who attempted the anal sex.

¶ 7    As stated, the jury found defendant guilty as charged, and he was sentenced to 26 years in prison. Defendant filed a direct appeal in which he argued *inter alia* that the trial court abused its discretion in denying him a continuance just before trial to permit further investigation into whether N.T. had been diagnosed with chlamydia, a sexually transmitted disease (STD). The trial record revealed that defense counsel specifically notified the court that counsel "had received information from Tomasenia indicating that N.T. had been diagnosed with three sexually transmitted diseases, including chlamydia" and maintained that "Tomasenia admitted that both she and the man she was then involved with tested positive for chlamydia, while defendant had tested negative for the disease." *People v. Hall*, 2012 IL App (1st) 1093574-U, ¶ 5. According to defense counsel, Tomasenia relayed that the medical testing for N.T. had been conducted in Gary, Indiana. This court rejected defendant's various claims on appeal and affirmed the trial court's judgment. *People v. Hall*, 2012 IL App (1st) 1093574-U.

¶ 8    About a year later, defendant filed a *pro se* postconviction petition alleging he was denied a fair trial and received ineffective assistance of trial counsel. Defendant alleged in relevant part that defense counsel was aware that N.T., her mother, and her mother's boyfriend all tested positive for the same strain of chlamydia, and N.T. also testified positive for another STD. However, counsel failed to timely procure N.T.'s STD-related medical records, which were located in Gary, Indiana. Defendant alleged those records may have proven exculpatory because

he did not test positive for any STDs. The child's medical records, defendant alleged, would have given rise to the inference that someone other than defendant was responsible for the sexual assault on N.T. Defendant attached an unnotarized affidavit stating that he attempted to obtain N.T.'s medical records reflecting her treatment for chlamydia but was unable to do so without aid from an attorney.

¶ 9        Defendant's petition advanced to the second stage of postconviction proceedings, where he was assigned a public defender to represent him. Postconviction counsel then filed a written Rule 651(c) certificate of compliance. The State filed a motion to dismiss, which was granted. The court found that defendant failed to show any constitutional violation or that his trial counsel was ineffective. Accordingly, the trial court dismissed defendant's postconviction petition. Defendant appealed.

¶ 10                                        ANALYSIS

¶ 11        The Act provides a three-stage process by which defendants may assert that their convictions were the result of a substantial denial of their constitutional rights. *People v. Boclair*, 202 Ill. 2d 89, 99-100 (2002); *People v. Burt*, 205 Ill. 2d 28, 35-36 (2001). The instant case involves the second stage of the postconviction process. At this stage, dismissal is warranted when the defendant's allegations, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). Any factual allegations not positively rebutted by the record are considered true. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). Our review at the second stage is *de novo. Coleman*, 183 Ill. 2d at 389.

¶ 12        Defendant now challenges the second-stage dismissal of his postconviction petition, with his sole contention being that he was denied reasonable assistance of counsel. Indeed, the right to

postconviction counsel is a matter of legislative grace, and a postconviction petitioner is only entitled to a reasonable level of assistance. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007); *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). Rule 651(c) provides that reasonable assistance requires performance of three duties. Counsel must: (1) consult with the defendant either by mail or in person to ascertain the contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. The purpose of Rule 651(c) is to "ensure that postconviction counsel shapes the defendant's claim into a proper legal form and presents them to the court." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. In doing so, counsel is not required to advance nonmeritorious claims on defendant's behalf. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).

¶ 13 Our review of an attorney's compliance with a supreme court rule is also reviewed *de novo*. *People v. Jones,* 2011 IL App (1st) 092529, ¶ 19. Where, as here, postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption is created that postconviction counsel provided reasonable assistance, and it is then the defendant's burden to overcome this presumption by demonstrating that counsel failed to substantially comply with the duties required by the rule. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 14 Defendant does not now dispute that his postconviction counsel consulted with him and examined the trial court proceedings, the first two prongs of Rule 651(c). Rather, he maintains that counsel failed to make the necessary amendments to his *pro se* petition in order to adequately present defendant's contentions, as required by the third prong of Rule 651(c). Defendant maintains that postconviction counsel failed to investigate his claims and argues the record rebuts postconviction counsel's certification.

¶ 15     As proof, defendant points out that postconviction counsel did not attach N.T's medical records from Gary, Indiana, to his petition, which would have established that his trial counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Dupree*, 2018 IL 122307, ¶ 44. A reasonable probability is a probability sufficient to undermine confidence in the result at trial, and actual prejudice must be shown rather than mere speculation as to prejudice. *People v. Bew*, 228 Ill. 2d 122, 135 (2008); *People v. Graham*, 206 Ill. 2d 465, 476 (2003). In considering whether trial counsel's performance was deficient, we indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *i.e.* that the challenged action is considered sound trial strategy. *People v. Luna*, 2013 IL App (1st) 072253, ¶ 87. A defendant must satisfy both prongs of the *Strickland* test. *People v. Evans*, 186 Ill. 2d 83, 94 (1999). For the reasons to follow, defendant cannot establish that his postconviction counsel was unreasonable as to this underlying claim set forth in defendant's *pro se* petition.

¶ 16    Here, the report of proceedings shows that defendant was represented during postconviction proceedings by Assistant Public Defender (APD)[1] Trenis Jackson,[2] who stated at a status hearing that he had communicated with defendant several times on the phone and via mail. APD Jackson noted that based on his review of the records and discussions with defendant, he was "in the midst of an investigation." Several months later, APD Jackson stated that he was speaking with defendant on a "weekly basis" and was "trying to locate an individual" in light of defendant's assertion that "the child was taken by her mother to a facility in *** Gary, Indiana." Contrary to defendant's contention otherwise, APD Jackson specifically stated he was investigating the matter. At the next hearing, APD Jackson noted he was filing his Rule 651(c) certificate and rested on defendant's *pro se* petition.

¶ 17    Given that certificate, as well as the representations in the report of proceedings, we presume that had the medical records that defendant identified or other supporting evidence been available to append to defendant's postconviction petition, his counsel would have appended the evidence. Thus, the record shows that defendant's counsel complied, insofar as compliance was possible, with Rule 651(c). See *People v. Johnson*, 232 Ill. App. 3d 674, 678 (1992) (noting, a mere failure to amend the *pro se* petition is not enough to establish inadequacy of representation in the absence of a showing that the petition could have been successfully amended). And, absent

_____

[1]The report of proceedings reflects that defendant was first represented by APD Maurice Sykes, who noted the postconviction issue as to trial counsel's conduct and stated that he would obtain trial counsel's records and also interview counsel to determine whether there was any ineffective assistance. Several months later, APD Sykes informed the court that he had received and reviewed the record. APD Sykes stated he would have "an investigator *** go through the file." APD Sykes then appeared along with a new APD, Trenis Jackson, and APD Sykes notified the court that he was getting transferred and moving to withdraw. We presume APD Sykes shared with APD Jackson whatever information he learned when representing defendant. See *People v. Benford*, 31 Ill. App. 3d 892, 895 (1975) ("When the public defender of a county is appointed for an indigent in a criminal case, it is the office of the defender that is appointed. *** In legal contemplation, then, it is the public defender who is in court after he is appointed, although he may appear there through appointed assistants.")

[2]The record identifies him at one point as "Prentice Jackson," but that appears to be a typo.

those records, there was no need to notarize defendant's affidavit, which again alleged that defendant attempted to obtain the medical records but was unable to. Without the medical records, defendant also would be hard-pressed to establish his trial counsel was deficient in representing him, since the records were the basis of his claim.

¶ 18     Regardless, we agree with the State that defendant cannot establish prejudice. At trial, defendant's theory of defense was that N.T. had been sexually abused, but not by defendant. Yet, defendant's ex-wife's testimony showed he effectively admitted to sexually abusing N.T. when defendant "acknowledged that there was some contact between him and his 10-year-old stepchild on the date in question, but he claimed that it was the *child* who voluntarily grabbed his penis and attempted to put it in her anus. Furthermore, the victim's mother testified that she saw defendant leave the girls' room, clad only in his underwear, declaiming that he had not done anything. When Tomasenia saw the child in her bed, her eyes were watery and only a blanket covered the fact that she was naked below the waist. When the testimony of these two witnesses is considered in conjunction with the rather detailed and compelling testimony of the child victim, it is difficult to accept the defendant's contention that the evidence against him was close. More properly put, it was overwhelming." *Hall*, 2012 IL App (1st) 1093574-U, ¶ 37.

¶ 19     Thus, even assuming defendant had attached records showing that N.T. had chlamydia, along with her mother and her mother's boyfriend, that evidence still did not establish defendant's innocence in light of the overwhelming evidence of his guilt delineated above. Defendant also has not provided on appeal any explanation of chlamydia and how it is transmitted, which renders his argument at best speculative and which significantly weakens any prejudice claim. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (the argument must contain the contentions of the appellant and the reasons therefor with citation to authorities); *People v.*

*Robinson*, 2013 IL App (2d) 120087, ¶ 15 (an appellant must present clearly defined issues supported by relevant authority, and the appellate court is "not simply a repository in which appellants may dump the burden of argument and research."). For all the reasons stated, defendant cannot establish there is a reasonable probability that the proffered evidence would have undermined confidence in the jury's verdict. Accordingly, defendant cannot establish a substantial violation of his constitutional rights, as required to advance his second-stage postconviction petition.

¶ 20    The cases cited by defendant do not compel a different result. In *People v. Turner*, 187 Ill. 2d 406, 412-17 (1999), unlike the case at bar, there was no indication that a Rule 651(c) certificate was filed, and the supreme court detailed several "omissions and failures" that led it to conclude that postconviction counsel's conduct amounted to "a total failure of representation." Counsel in that case had not consulted with petitioner, examined pertinent portions of the record, or amended the *pro se* petition. Likewise, in *People v. Suarez*, 224 Ill. 2d 37 (2007), postconviction counsel failed to file a 651(c) affidavit, and the record did not show compliance with 651(c). In that context, the *Suarez* court held that remand was required regardless of whether the claims raised in the petition were meritorious; the court found that noncompliance with the rule could not be excused on the basis of harmless error. *Suarez*, 224 Ill. 2d at 51-52. Here, as stated, counsel's Rule 651(c) certificate gave rise to a rebuttable presumption that he performed the duties required by the rule. And, contrary to defendant's claim otherwise, in this case, whether the *pro se* allegations had merit was "crucial to determining whether counsel acted unreasonably by not filing an amended petition." *Profit*, 2012 IL App (1st) 101307, ¶¶ 22-23 (distinguishing *Suarez* on similar grounds). We have found that they do not, and defendant has

failed to fulfill his burden of demonstrating that counsel did not comply with the duties required by Rule 651(c). See *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 21    As a result, we also reject defendant's contention that postconviction counsel was required to amend his petition to assert ineffective assistance of appellate counsel and actual innocence. Defendant notes postconviction counsel argued those claims at the hearing on the State's motion to dismiss the petition but did not amend defendant's *pro se* petition to reflect those claims. Defendant, however, fails to explain how those claims were necessary to adequately present his contentions already raised in his *pro se* postconviction, most of which were already raised on direct appeal or involved evidence outside the trial record. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Robinson*, 2013 IL App (2d) 120087, ¶ 15; see also *People v. Kirklin*, 2015 IL App (1st) 131420, ¶ 130 (matters not supported by the trial record are not appropriately raised on direct appeal). That renders an ineffective assistance of appellate counsel claim meaningless. As for the actual innocence claim, there was no new, material, noncumulative evidence that was so conclusive it would have changed the result on retrial. See *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 196 (noting the requirements for an actual innocence claim). Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. *People v. Greer*, 212 Ill. 2d 192, 205 (2004). In addition, while postconviction counsel may raise additional issues if he so chooses, there is no obligation to do so. *Pendleton*, 223 Ill. 2d at 476; see also *People v. Rials*, 345 Ill. App. 3d 636, 641 (2003) (" '[P]ostconviction counsel is not required to comb the record for issues not raised in the defendant's *pro se* post-conviction petition.' ").

¶ 22                                CONCLUSION

- 10 -

¶ 23    For all the reasons stated, defendant's contention that his postconviction counsel was unreasonable in representing him fails. We thus affirm the second-stage dismissal of his postconviction petition.

¶ 24    Affirmed.