NOTICE

Decision filed 04/26/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220249-U

NO. 5-22-0249

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-1386 |
| | ) | |
| BRIAN A. THOMPSON, | ) | Honorable |
| | ) | Rodney S. Forbes, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse defendant's conviction where the State failed to prove beyond a reasonable doubt that defendant violated section 3(a) of the Sex Offender Registration Act by knowingly providing false information to law enforcement.

¶ 2    Following a jury trial in the circuit court of Macon County, defendant, Brian A. Thompson, was convicted of unlawful failure to register as a sex offender in violation of section 3(a) of the Sex Offender Registration Act (Act) (730 ILCS 150/3(a) (West 2020)). The trial court thereafter sentenced defendant to two years' imprisonment, followed by one year of mandatory supervised release. Defendant appeals, arguing that the evidence was insufficient to sustain his conviction and, alternatively, that he was denied effective assistance of counsel. For the following reasons, we reverse defendant's conviction.

1

¶ 3                                    I. Background

¶ 4     On November 11, 2021, the State charged defendant by information with unlawful failure to register as a sex offender, a Class 3 felony (*id.* § 10(a)). The State alleged that, between the dates of August 6, 2021, and October 29, 2021, defendant, "upon registration, failed to provide accurate information as to his current address, in that he told Deputy Matt Whetstone that he was homeless when in fact he was living at Apartment #1, 3275 Beth Boulevard, Decatur, Macon County, Illinois."[1]

¶ 5     On February 14, 2022, the case proceeded to a jury trial. As a preliminary matter, the trial court granted defense counsel's pretrial motion *in limine* seeking to exclude evidence of defendant's prior conviction for aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2016)), the underlying offense requiring defendant to register as a sex offender. Defense counsel stipulated that defendant was a sex offender who was legally required to register in accordance with the Act. The court read the stipulation to the jury before the State called its first witness.

¶ 6     The State called Tricia Knierim to testify. Knierim testified that she was the general manager of Swartz Properties. She identified a rental application defendant prepared and signed on March 1, 2021. Defendant's mother, Frankie Thompson, also signed the rental application. The rental application identified defendant as the applicant and his mother as the co-applicant. Knierim next identified a lease agreement defendant signed on April 8, 2021. Defendant's mother also co-signed the lease agreement. The lease agreement listed both defendant and his mother as lessees of an apartment located at 3275 Beth Boulevard #1 in Decatur, Illinois. Knierim next identified a photocopy of defendant's Illinois identification card, which defendant provided during the

---

[1]The record on appeal contains a sworn statement prepared by Detective Matthew Whetstone, which set forth the grounds for defendant's arrest on November 2, 2021. According to the sworn statement, the Macon County Sheriff's Office arrested defendant for the offense of "Failure to Register Address."

application process. On cross-examination, Knierim testified that Swartz Properties conducts background checks on applicants to discover prior convictions or felonies. The rental application, lease agreement, and photocopy of defendant's Illinois identification card were admitted, published, and sent back with the jury during deliberations without objection.

¶ 7     The State next called Detective Matthew Whetstone from the Macon County Sheriff's Office to testify. Whetstone testified that his job duties required him to maintain "all records of sex offenders" and to monitor "their living status, their internet access, who they have access to, things like that." Whetstone conducted an annual sex offender registration check. Whetstone testified that he knew defendant, because defendant was a registered sex offender.

¶ 8     Detective Whetstone testified that defendant signed a duty to report form as part of his registration requirements, which listed "his registered address, his phone number, his job, his vehicle, along with basically all the information he's required by the state to register with, and then also describes the limitations that he has based on his status." Whetstone identified a copy of the duty to report form defendant signed and initialed in Whetstone's presence. Whetstone testified that defendant initialed paragraph 5 of the form, which stated that "any person who was required to register under this Act who knowingly or willfully gives material information required by this Article that is false, is guilty of a Class 3 felony." The copy of the duty to report form defendant signed was admitted, published, and sent back to the jury during deliberations without objection.

¶ 9     Detective Whetstone testified that defendant reported he was homeless. As a result, defendant was required to register with the sheriff's department every week and advise where he stayed each night. Whetstone testified that, at some point, defendant attempted to report an address to the Decatur Police Department. Whetstone was not "100 percent on the numbers, but it was a Beth Boulevard address." Decatur police informed defendant that he could not stay at the Beth

Boulevard address because it was within 500 feet of a Girl Scouts of America property. Defendant continued to report as homeless when he registered with the sheriff's department each week.

¶ 10    Detective Whetstone testified that he went to the apartment complex located at 3275 Beth Boulevard when he conducted annual registration checks in late October or early November 2021. Upon entry, Whetstone observed mailboxes for the apartments and noted the mailbox for "Apartment 1" listed defendant's last name. Whetstone contacted Swartz Properties and learned that "Brian Thompson was the individual renting the apartment." Whetstone obtained copies of defendant's rental application and lease agreement for the apartment, along with the photocopy of his identification card.

¶ 11    Detective Whetstone testified that he returned to the apartment complex on November 2, 2021. Upon arrival, he contacted defendant and arranged a meeting at the sheriff's office. Whetstone explained that he arranged the meeting "to see if we observed anyone exiting the apartment." Whetstone observed defendant "walking on the back of the apartments, so he exited out the back of the apartments instead of the front and was walking behind the fence line, walking to the south, which I believe possibly to catch the bus." Whetstone then confronted defendant and expressed concern that defendant resided in Apartment #1 at Beth Boulevard. Whetstone retrieved a key from defendant's front pants pocket, which he learned "was the key to unlock Apartment 1." Defendant allowed Whetstone to enter the apartment. Once inside, Whetstone observed that "[t]he apartment was full with a lot of belongings." Defendant admitted ownership of the belongings. Whetstone also observed several pieces of mail addressed to defendant at the Beth Boulevard address, as well as "food, things to drink, bathroom items, things like that." When the State asked Whetstone if it appeared as though someone was actively living in the apartment, Whetstone

4

replied, "Absolutely, yes." Whetstone testified that defendant claimed "he spent time there working on bicycles and showering, but he was still sleeping behind businesses at night."

¶ 12 Detective Whetstone testified that the place a person sleeps is not the only factor law enforcement considers when determining where a person lives. Based on his training and experience, Detective Whetstone believed defendant was living in Apartment #1.

¶ 13 On cross-examination, Whetstone testified that defendant registered as homeless each week, and that he never missed or skipped weekly registration. Whetstone confirmed that defendant provided information about where he stayed each day of the week. Whetstone did not know if defendant signed the lease agreement before he learned he was not allowed to live at the apartment. Whetstone agreed that it was possible defendant signed the lease before he knew he was not allowed to stay there. When asked if he ever caught defendant spending the night or sleeping overnight at the apartment, Whetstone responded, "At no point did I observe him sleeping." Defense counsel asked Whetstone if the address listed on defendant's identification card was the address of the Oasis Day Center, a place where the homeless can get meals during the day. Whetstone did not know the exact address of the day center, but he agreed it was in the same area as the address listed on defendant's identification card.

¶ 14 On redirect, Detective Whetstone clarified that defendant never attempted to report the apartment address as a place he stayed. Whetstone confirmed that defendant continually reported that he was homeless. The State rested following Whetstone's testimony, and defendant elected not to testify.

¶ 15 During closing arguments, the State argued that defendant reported he was homeless while maintaining a fully furnished apartment leased in his name. The State asserted that the apartment was "full of food, furnishings, drinks and all of [defendant's] belongings." The State stated,

5

"Please don't check your common sense at the door, folks." The State argued that Detective Whetstone believed "he was looking at a fully lived-in apartment," and that it made no sense that defendant was "sleeping behind businesses" and only "using this leased apartment as a storage facility," as he claimed.

¶ 16    Contrary to the State's position, defense counsel argued that defendant did not stay at the apartment but merely kept his belongings there. Defense counsel maintained that defendant did not stay at the apartment because police advised defendant that he was not allowed to live in the apartment. Defense counsel asserted that defendant believed he was able to live at the apartment when he signed the lease, but defendant later learned he could not live there when he attempted to register the address with police. Defense counsel claimed that defendant never stayed the night at the apartment. Defense counsel also claimed that there was no rule prohibiting defendant from visiting the apartment, he was just not allowed to live there. Defense counsel noted that defendant registered with law enforcement each week and provided a list of all the places he stayed during the week. Defense counsel argued that the State failed to present evidence showing that defendant was not staying at the places he reported to law enforcement, or that law enforcement even investigated those places. Thus, defense counsel claimed that there was no evidence demonstrating that defendant provided false information about the places he stayed.

¶ 17    In rebuttal, the State argued that it presented evidence demonstrating that defendant reported he was homeless but leased an apartment. The State maintained that the evidence indicated that defendant lived at the apartment. According to the State, law enforcement investigated defendant because his "story of being homeless did not make sense to the detective who [was] charged with specifically going and doing these checks every year." The State again

6

requested that the jury use "common sense" and find defendant guilty beyond a reasonable doubt after looking at the facts of the case.

¶ 18    The trial court provided various jury instructions. The court instructed the jury that "[a] person commits the offense of failure to register as a sex offender when he knowingly gives material information required by law that is false regarding where he resides." See Illinois Pattern Jury Instructions, Criminal, No. 9.43F (4th ed. Supp. 2011). The court also instructed the jury that the State was required to prove the following propositions to sustain the charge of failure to register as a sex offender: (1) that defendant is a sex offender and (2) that the defendant knowingly gave material information required by law that is false. See Illinois Pattern Jury Instructions, Criminal, No. 9.43H (4th ed. Supp. 2011).

¶ 19    The jury subsequently found defendant guilty of unlawful failure to register as a sex offender. Defense counsel did not file a posttrial motion on defendant's behalf.

¶ 20    On March 31, 2022, the trial court sentenced defendant to two years in the Illinois Department of Corrections, followed by one year of mandatory supervised release. Defendant filed a motion to reconsider sentence, which the court denied. Defendant timely appealed.

¶ 21                                   II. Analysis

¶ 22    On appeal, defendant first argues that the evidence was insufficient to support his conviction for unlawful failure to register as a sex offender.[2] Specifically, he argues that the State failed to prove, beyond a reasonable doubt, that the information he provided to law enforcement was not accurate. Defendant maintains that he provided accurate information to law enforcement when he registered as homeless each week, despite the fact that he leased an apartment and kept

---

[2]While defendant did not raise this issue in a posttrial motion, a challenge to the sufficiency of the evidence is not subject to the forfeiture rule and may be raised for the first time on direct appeal. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005).

his belongings there. Defendant asserts that the State failed to present any affirmative evidence establishing that he was not staying at the places he reported each week. He also asserts that the State failed to present evidence showing that he resided at the apartment for an aggregate of three or more days during a calendar year, such that he would have been required to register that address as his residence.

¶ 23 The State argues that the evidence, when viewed in a light most favorable to the prosecution, was sufficient to prove defendant guilty of unlawful failure to register as a sex offender. The State asserts that it proved defendant provided false information to law enforcement when he reported as homeless, where the evidence demonstrated that defendant leased an apartment, possessed a key to the apartment, and kept his belongings at the apartment.

¶ 24 In a challenge to the sufficiency of the evidence, the question is whether, viewing the evidence in the light most favorable to the prosecution, any reasonable trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. Consequently, "a reviewing court will not substitute its judgment for the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *Id*. A conviction will not be overturned unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 25 Defendant was charged and convicted under sections 3(a) and 10(a) of the Act (730 ILCS 150/3(a), 10(a) (West 2020)). Section 3(a) requires a sex offender to provide accurate information to law enforcement, including the registrant's current address. *Id.* § 3(a). Section 3(a) does not define the term "current address" but does define "the place of residence or temporary domicile"

as "any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." *Id*. Section 2(I) of the Act defines "fixed residence" as "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." *Id.* § 2(I). Section 3(a) further provides:

> "Any person who lacks a fixed residence must report weekly, in person, with the sheriff's office of the county in which he or she is located in an unincorporated area, or with the chief of police in the municipality in which he or she is located. The agency of jurisdiction will document each weekly registration to include all the locations where the person has stayed during the past 7 days." *Id.* § 3(a).

Section 10(a) of the Act provides that "[a]ny person who is required to register under this Article who knowingly or willfully gives material information required by this Article that is false is guilty of a Class 3 felony." *Id*. § 10(a). As our supreme court recognized, the statutory scheme established by the Act "leaves something to be desired, in terms of clarity and consistency." *People v. Pearse*, 2017 IL 121072, ¶ 39.

¶ 26    In the present case, the State charged that, between the dates of August 6, 2021, and October 29, 2021, defendant, "upon registration, failed to provide accurate information as to his current address, in that he told Deputy Matt Whetstone that he was homeless when in fact he was living at Apartment #1, 3275 Beth Boulevard, Decatur, Macon County, Illinois." It appears the State charged defendant with failure to register as a sex offender based on his alleged false representation that he was homeless. As such, the trial court instructed the jury that the State was required to prove that (1) defendant was a sex offender and (2) defendant knowingly gave material information that was false. Despite this, the parties appear to agree that the State was required to prove four elements: (1) that defendant was required to register as a sex offender, (2) that the

9

Department of State Police required defendant to disclose where he lived, (3) that where defendant lived was material information, and (4) that defendant knowingly or willfully gave false material information regarding his address. See *People v. Manskey*, 2016 IL App (4th) 140440, ¶¶ 94-98.

¶ 27 The parties stipulated that defendant was a sex offender at trial. Defendant also concedes on appeal that the Department of State Police required him to disclose where he lived and that where he lived was material information. The parties dispute whether the State proved, beyond a reasonable doubt, that defendant knowingly gave material information regarding his residence, or lack thereof, that was false.

¶ 28 As defendant correctly notes, the State did not present any affirmative evidence establishing that the information defendant provided when he reported as homeless was false. Detective Whetstone testified that defendant claimed he used the apartment to store his belongings and take showers, but he did not stay at the apartment. Whetstone did not testify regarding the specific locations defendant reportedly stayed each week during the relevant time period. Whetstone merely testified that defendant reported that he slept behind unnamed businesses each night. Accordingly, there was no evidence establishing the specific places defendant reportedly stayed each night from August 6, 2021, and October 29, 2021. Moreover, Whetstone testified that he did not investigate the places defendant reportedly stayed during the relevant time period. Whetstone also testified that he never observed defendant sleep during the relevant time period. As a result, there was no evidence demonstrating that defendant stayed at the apartment, rather than the places he reportedly stayed each night. In other words, the State failed to meet its "affirmative obligation to investigate the charge." *People v. Robinson*, 2013 IL App (2d) 120087,

¶ 21. Consequently, there was no evidence establishing that defendant knowingly provided false information to law enforcement.[3]

¶ 29   The State instead presented evidence showing that defendant leased an apartment where he received mail and kept food, drinks, and personal belongings. Detective Whetstone testified that he observed defendant leaving the building where the apartment was located and that he retrieved a key to the apartment from defendant's pocket shortly thereafter. Whetstone testified that he believed defendant lived in the apartment, and that defendant did not report the apartment address during his required weekly registration. While this evidence may have been sufficient to prove some violation of the Act, it was insufficient to prove that defendant knowingly gave false information that he was homeless.

¶ 30   Notably, the State did not charge defendant with failure to register as a sex offender based on his failure to report the apartment as his current address, which would have required proof that the apartment constituted defendant's place of residence or temporary domicile. See 730 ILCS 150/3(a)(1), (a)(2) (West 2020) (requiring a sex offender to register in person with either the chief of police or the sheriff in the municipality or county where he or she resides or is temporarily domiciled for a period of three or more days); see also *People v. Gomez*, 2017 IL App (1st) 142950, ¶ 16 (noting that in order to prove a violation of section 3(a)(1), the State was required to prove both (1) that the defendant resided or was temporarily domiciled at a specific location and (2) that

---

[3]We note that the record contains a sworn statement prepared by Detective Whetstone, which provided additional information that could have supported the charged offense. In the sworn statement, Whetstone noted that he went to the apartment complex while conducting annual sex offender residence checks and contacted one of the individuals who lived at a residence where defendant reportedly stayed on occasion. Whetstone noted that the individual denied that defendant stayed with him and claimed that defendant had his own apartment in the complex. The sworn statement also added that defendant had a bed with sheets and a comforter at the apartment. While these additional facts may have supported the State's allegation that defendant knowingly provided false information to law enforcement, the State failed to elicit testimony from Whetstone regarding these details at trial and, thus, such evidence was not before the jury.

the defendant failed to register there). Nor did the State charge defendant with failure to report a change of address in violation of section 6 of the Act (730 ILCS 150/6 (West 2020)), which would have required the State "to prove that defendant: (1) was previously convicted of an offense subjecting him to the Act; and (2) established a new 'fixed residence' or 'temporary domicile'; (3) which he knowingly failed to report in person to the law enforcement agency with whom he last registered." *Robinson*, 2013 IL App (2d) 120087, ¶ 14 (citing 730 ILCS 150/6 (West 2008), and *People v. Harris*, 333 Ill. App. 3d 741, 745 (2002)).

¶ 31   In sum, the State failed to present sufficient evidence to establish that defendant knowingly provided false information that he was homeless and, thus, we hold that the State failed to prove all elements of the charged offense beyond a reasonable doubt. Therefore, we need not address defendant's remaining arguments in support of his claim that he was denied effective assistance of counsel.

¶ 32                                  III. Conclusion

¶ 33   For the reasons stated, we reverse defendant's conviction.

¶ 34   Reversed.