2025 IL App (2d) 240537-U
No. 2-24-0537
Order filed November 18, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-478 |
| JAMES W. TURUC, | ) ) ) | Honorable Mark R. Gerhardt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The State sufficiently proved that defendant, a registered sex offender, failed to timely report a new cell phone number.  The State did not need to prove that defendant's failure was knowing, because the offense was an absolute liability offense under the statute.  (2) The State's question to defendant on cross-examination did not shift the burden of proof, but was relevant to the credibility of defendant's testimony that he reported his new cell number to a receptionist at the sheriff's office.  Regardless, any error was not prejudicial.

¶ 2    After a bench trial, defendant, James W. Turuc, was found guilty of violating section 6 of the Sex Offender Registration Act (Act) (730 ILCS 150/6 (West 2020)) by failing to timely notify the McHenry County Sheriff's Office (Sheriff's Office) of his new cell phone number.  The trial

court denied his posttrial motion and sentenced him to 24 months' conditional discharge. On appeal, defendant argues that (1) he was not proved guilty beyond a reasonable doubt, because (a) the State did not prove that his alleged violation was knowing, and (b) the State did not rebut his defense; and (2) in cross-examining him, the State impermissibly shifted the burden of proof. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      As pertinent here, the State charged defendant with violating section 6 of the Act in that:

"[O]n or about June 29, 2022, *** defendant, a sex offender required to register in accordance with [the Act], knowingly failed to notify the [Sheriff's Office] of establishing a telephone number, within three days after establishing said number, said telephone number ending in '7361.' "[1]

¶ 5      We summarize the evidence at trial. Michael Roehrkasse testified as follows. At all pertinent times, he was a detective with the Sheriff's Office and conducted the annual registrations of sex offenders. Typically, a previously registered sex offender who reports for an annual registration speaks first with the receptionist about any updates; the receptionist then prints out a document that is given to a detective. The detective then "goes over that information with the sex offender when they come in, and then there's other paperwork that they initial by as well before we sign it."

¶ 6      Roehrkasse testified that, on April 13, 2022, defendant reported for his annual registration. Roehrkasse identified People's exhibit No. 1 as the form that he and defendant reviewed and

---

[1]Defendant was also charged with violating section 6 by failing to timely report a change of employment. The State voluntarily dismissed this charge. It is not at issue here.

signed. The form was admitted into evidence. It listed two telephone numbers: one ending in 2138 and the other in 3445. Defendant did not inform Roehrkasse of any other phone number.

¶ 7 On cross-examination, Roehrkasse testified that Brittany Huirochea was the receptionist on April 13, 2022. Roehrkasse was not a party to any conversation between her and defendant and did not know what he told her about a phone number. Also, Roehrkasse did not actually remember his conversation with defendant on April 13, 2022. On redirect examination, he testified that, had any corrections to the form been needed, he and defendant would have made them before signing the form.

¶ 8 Jeffrey Fields, a detective with the Sheriff's Office, testified as follows. On May 19, 2022, he was assigned to verify the information in defendant's April 13, 2022, update form. Fields visited defendant's home twice with no response. He then called the two numbers listed on the form. He spoke with someone who said she was defendant's mother, and she provided him with a number for defendant. The number ended with 7361. Using a database, Fields verified that the number belonged to defendant. Shortly afterward, he received a call from that number; the caller identified himself as defendant. On June 27, 2022, Fields called the number. Defendant answered. Fields told defendant that "it's time for his annual verification" and that Fields "just needed to meet up with him and review the form, *** make sure it was correct, and have him sign off on it."

¶ 9 Fields testified that he met with defendant on June 29, 2022, at defendant's mother's home, where defendant resided. Fields identified People's exhibit No. 2 as the verification form that he took there. The two-page form was admitted into evidence. Its first page contained essentially the same printed information as the first page of People's exhibit No. 1. At the top of the second page was an attestation signed by defendant and Fields. Defendant filled in blanks for the date: "this *29th* day of *July 4th* 2022 [*sic*]" (the italicized matter was in defendant's handwriting; the

remainder was preprinted). To the side of this writing was a handwritten and initialed change correcting the date to June 29, 2022. Immediately below the attestation was a section for "NOTES." In that section, defendant wrote, "cell # ***-***-7361. Had about 1 yr." At the bottom of the page is the following statement handwritten by Fields:

"The phone # [defendant's] mother gave me and the one I have been speaking to him on is ***-***-7361, [defendant] listed ***-***-7361 above."

¶ 10 Fields testified that he told defendant that, when he had to make changes such as a new phone number, he was required to report them to the Sheriff's Office. Defendant told Fields that "he had contacted his PO and he thought that was all he had to do." Fields assumed that "PO" meant either "parole officer" or "probation officer." Defendant did not tell Fields that he had reported the 7361 cell number to either the Sheriff's Office or the state police. Defendant did not "express concern *** about prior attempts to report his phone number to the [S]heriff's [O]ffice." According to Fields, defendant did not include the 7361 cell number on any prior forms that he had submitted to the Sheriff's Office. To Fields's knowledge, between June 27, 2022, and June 29, 2022, defendant never came to the Sheriff's Office to report the new number.

¶ 11 The trial court admitted People's exhibit No. 3, a compact disc containing subscriber information from T-Mobile for the 7361 cell number. According to the CD, defendant subscribed to the number starting on May 5, 2021.

¶ 12 The trial court admitted a certified copy of a judgment dated July 28, 2010, sentencing defendant to 15 years for criminal sexual assault.

¶ 13 The State rested.

¶ 14 Defendant testified as follows. He was released from prison on April 26, 2021, and moved into his mother's house. At that time, he did not have a cell phone. His mother's cell phone

number ended in 2138. When defendant registered as a sex offender on April 26, 2021, he disclosed both his address and his mother's cell phone number. On May 10, 2021, he went to the Sheriff's Office and updated his information. He spoke to Huirochea, the receptionist. He told her the 7361 cell number.

¶ 15    On cross-examination, defendant testified that, on May 10, 2021, he never signed any forms that verified the 7361 cell number. That day, he met with two detectives. "[B]oth told [defendant] and reiterated what [Huirochea] was telling [him], that she attached everything [defendant] gave her to the original registration." However, defendant never signed a new registration form that included the 7361 cell number.

¶ 16    Defendant testified that, on June 29, 2022, Fields did not tell him that he needed to report the 7361 cell number to the Sheriff's Office. Defendant's testimony continued:

"Q. You never at that point told Detective Fields that you had already reported this phone number to the [S]heriff's [O]ffice; that's correct?

MR. STONE [(DEFENSE ATTORNEY)]: Objection.

THE COURT: Basis?

MR. STONE: It's burden shifting. It's attempting to have someone who had no obligation to tell that detective what he did or didn't do and suggesting that if he never said it, that's evidence.

THE COURT: Objection is overruled. Court will not take it as any such burden shifting. You may answer the question."

Defendant's initial answer drew an objection that the answer was nonresponsive. The objection was sustained. When the question was asked again, defendant answered, "I told them the registration did not get posted."

¶ 17    On redirect examination, defendant testified that, when he registered on April 26, 2021, he had no phone number other than his mother's. On April 13, 2022, he informed Huirochea of the 7361 cell number. Later, he learned that Huirochea had not included the number in his information. Defendant notified her of the omission. He also informed Tracy Newton of the state police sex-offender unit.

¶ 18    Defendant rested.

¶ 19    In rebuttal, Roehrkasse testified as follows. On April 26, 2021, he registered defendant as a sex offender. He and defendant reviewed and signed People's exhibit No. 6, the registration form. On the form, Roehrkasse wrote "Refused," which meant that defendant declined to have Roehrkasse read the form to him before they signed it. The exhibit was admitted into evidence. It lists one phone number: the cell number ending in 2138.

¶ 20    In closing argument, the State contended that the evidence proved that, although defendant obtained the 7361 cell number in May 2021, it was not reported on any form he filled out through April 13, 2022. The State also contended that it need not prove that the alleged violation was knowing, because, in *People v. Molnar*, 222 Ill. 2d 495, 520-22 (2006), the supreme court held that, under section 150/10(a) of the Act (730 ILCS 150/10(a) (West 2020)), a violation of the Act such as was charged here is an absolute liability offense.

¶ 21    Defendant argued as follows. The State failed to refute his testimony that he reported the 7361 cell number to Huirochea; indeed, the State did not call Huirochea at all. Based on the "unrebutted" evidence that Huirochea had "failed to transcribe something to a form," the court should find defendant not guilty. Further, Fields testified not that defendant "told him that there were things in error," but only that defendant "didn't say," which "is not the same as making a statement of guilt." Defendant did "everything that he was supposed to do by registering, re-

registering, answering questions, giving information, [and] providing information to Miss Huirochea."

¶ 22    In rebuttal, the State argued that there was no need for Huirochea to testify, because Roehrkasse's testimony established that defendant reviewed and signed the April 13, 2022, update form, which failed to list the 7361 cell number.

¶ 23    In finding defendant guilty, the trial court stated as follows.  Defendant subscribed to the 7361 cell number starting on May 5, 2021.  The update form dated 11 months later (April 13, 2022) did not list that number.  Defendant's defense to this omission was "it's [Huirochea]'s fault," but the obligation to report the number belonged to defendant.  He could not "consider it reported once the [S]heriff's [Office] figures out what his real phone number is."  On June 29, 2022, defendant told Fields "the wrong phone number," but that did not "really matter"—the true concern was that defendant had not listed the 7361 cell number on the April 13, 2022, form.

¶ 24    Defendant filed a posttrial motion, arguing in part that the trial court erred by overruling his objection to the cross-examination that he alleged shifted the burden of proof.  The trial court denied the motion.  This timely appeal followed.

¶ 25                                II. ANALYSIS

¶ 26    On appeal, defendant argues that (1) he was not proved guilty beyond a reasonable doubt and (2) in cross-examination, the State impermissibly shifted the burden of proof.  We consider these arguments in turn.

¶ 27    On a challenge to the sufficiency of the evidence, we ask only whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *People v. Baskerville*, 2012 IL 111056, ¶ 31.  The fact finder, not this court, is responsible for determining the witnesses'

credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995).

¶ 28    We consider defendant's first subargument: that the State failed to prove that he knowingly failed to report the 7361 cell number. Relying on *People v. Brock*, 2015 IL App (1st) 133404, defendant contends that knowledge is an element of the offense. The State responds that knowledge need not be proven, because, under section 10(a) of the Act (730 ILCS 150/10(a) (West 2020)) as construed in *Molnar*, defendant was charged with an absolute liability offense.

¶ 29    Section 6 of the Act reads:

> "Duty to report; ***. Any other person who is required to register under this Article shall report in person to the appropriate law enforcement agency with whom he or she last registered within one year from the date of registration and every year thereafter[.] *** If any other person required to register under this Article changes his or her residence address, place of employment, telephone number, cellular telephone number, or school, he or she shall report in person, to the law enforcement agency with whom he or she last registered, his or her new address, change in employment, telephone number, cellular telephone number, or school[.]" *Id.* § 6.

¶ 30    Section 10(a) reads:

> "(a) Any person who is required to register under this Article who violates any of the provisions of this Article *** is guilty of a Class 3 felony. *** Any person who is required to register under this Article who knowingly or willfully gives material information required by this Article that is false is guilty of a Class 3 felony. ***." *Id.* § 10(a).

¶ 31    Section 4-9 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/4-9 (West 2020))

provides, as pertinent to felonies:

"A person may be guilty of an offense without having, as to each element thereof,

one of the mental states described in Sections 4-4 through 4-7 if *** the statute defining

the offense clearly indicates a legislative purpose to impose absolute liability for the

conduct described."

¶ 32    Statutory construction raises issues of law, which we review *de novo*. *Molnar*, 222 Ill. 2d

at 519.

¶ 33    In *Molnar*, the defendant was charged with violating the Act by (1) failing to register a

change of address within 10 days of moving and (2) knowingly giving a false address on his

reregistration. *Id.* at 502. Section 1280.40 of the Illinois Administrative Code (Administrative

Code) (20 Ill. Adm. Code 1280.40(a) (2002)) provided that "[a] sex offender shall register in

person annually within one year after his or her last registration." Under section 7 of the Act (730

ILCS 150/7 (West 2002)), the director of the state police was authorized to extend for 10 years the

registration period of any sex offender who failed to comply with the Act.

¶ 34    The defendant in *Molnar* challenged, on various grounds, the constitutionality of section 7

of the Act and section 1280.40 of the Administrative Code. *Molnar*, 222 Ill. 2d at 498-99. The

supreme court addressed, *inter alia*, whether those provisions "were unconstitutional because

section 10 of [the Act] authorizes a felony penalty for violating [the Act], an offense that requires

no *mens rea*, or mental state." *Id.* at 517. Because the charge of knowingly giving a false address

upon reregistration contained a mental state, the court limited its analysis to whether the charge of

failing to register a change of address within 10 days of moving was an absolute liability offense.

*Id.* at 520. The court noted that the latter charge "alleged a violation *** of section 10, which

states that any person required to register under [the Act] who violates any provision of [the Act] is guilty of a Class 4 felony." *Id.*

¶ 35    The supreme court began its analysis by citing section 4-9 of the Criminal Code, which has remained unchanged since *Molnar*. See *id.* at 519 (citing 720 ILCS 5/4-9 (West 2002)).

¶ 36    The supreme court then considered section 10 of the Act, which read in pertinent part:

"Any person who is required to register under this Article who violates any of the provisions of this Article *** is guilty of a Class 4 felony. Any person who is required to register under this Article who knowingly or willfully gives material information required by this Article that is false is guilty of a Class 3 felony." 730 ILCS 150/10 (West 2002).

Thus, when *Molnar* was decided, section 10 was not materially different than the version applicable here.[2]

¶ 37    The supreme court concluded that section 10 clearly indicated that the legislature intended to impose absolute liability for the failure to timely register a change of address. The court explained:

"On its face, the portion of section 10 at issue does not require a culpable mental state. In addition, the offense is a felony punishable by incarceration and a minimum fine of $500. Consequently, in order to constitute an absolute liability offense, [the Act] must indicate a legislative purpose to impose absolute liability for a violation of [the Act].

The legislative intent to impose absolute liability can be discerned from several sources. First, the plain language of section 10 provides for absolute liability. Second, a clear legislative purpose to impose absolute liability is evident from reading section 10 in

_____

[2]The version applied in *Molnar* lacked subsections.

its entirety. While the first sentence of section 10 provides that '[a]ny person who is required to register under this Article who violates any of the provisions of this Article *** is guilty of a Class 4 felony,' the next sentence states that '[a]ny person who is required to register under this Article *who knowingly or wilfully* gives material information required by this Article that is false is guilty of a Class 3 felony.' (Emphasis added.) [Citation.] This court has noted that, 'by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended.' *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). Thus, in *K.C.*, this court held that the fact that the legislature specifically included a mental state in one section, and specifically deleted the mental state from another section, supported a conclusion that the legislature intended to impose absolute liability in the provision where the mental state was absent. *K.C.*, 186 Ill. 2d at 550. To hold otherwise would render the 'knowingly' language 'meaningless surplusage.' " *Molnar*, 222 Ill. 2d at 520-21.

¶ 38 *Molnar* disposes of defendant's first subargument on reasonable doubt. *Molnar*'s analysis compels us to conclude that the offense charged here, like the offense charged in *Molnar*, is an absolute liability offense. Section 6 does not require proof of a mental state, and section 10(a) distinguishes the offense of giving false material information from any other violation of the Act, requiring a mental state for that offense only. Therefore, *Molnar* refutes defendant's position.

¶ 39 Defendant's reliance on *Brock* is unavailing. To the extent that *Brock* is contrary to *Molnar*, we must follow our supreme court. Moreover, *Brock* is distinguishable. There, the indictment charged that the defendant violated section 6 of the Act in that (1) he " 'knowingly failed' " to timely report, in person, to the law enforcement agency with which he had last registered and (2) he changed his address and " 'knowingly failed to report' " the change within

three days. *Brock*, 2015 IL App (1st) 133404, ¶ 3. The defendant was convicted of both offenses. *Id.* ¶ 10. The appellate court reversed the first conviction, but not on the basis that the offense required a mental state. Rather, the court accepted the defendant's argument that section 6's in-person reporting requirement was not also a registration requirement; therefore, the undisputed fact that the defendant reported in person, albeit he did not register at that time (*id.* ¶ 9), defeated his conviction. *Id.* ¶¶ 22-24. Thus, *Brock* simply did not address the issue of the requisite mental state. We add that, although the indictment in *Brock* alleged that the defendant *knowingly* failed to report, that language was surplusage, and so the State would not have needed to prove knowledge to obtain a conviction. See *People v. Foley*, 206 Ill. App. 3d 709, 718-19 (1990); *People v. Tanner*, 142 Ill. App. 3d 165, 169 (1986).

¶ 40    At oral argument, defendant contended that, because the indictment specifically alleged that he knowingly failed to timely report the 7361 cell number, the State was required to prove knowledge. Under *Foley* and *Tanner*, that contention is legally erroneous because, as explained, the allegation of knowledge was surplusage and, thus, "need not *** [be] proved for [the] defendant to be convicted of the offense[ ] charged." *Foley*, 206 Ill. App. 3d at 718-719.

¶ 41    We turn to defendant's second reasonable-doubt subargument: that, on April 13, 2022, he complied with section 6 of the Act by informing Huirochea of the 7361 cell number. We disagree for two reasons. First, the trial court was not obligated to credit defendant's testimony. The court could infer from the absence of the 7361 cell number on the April 13, 2022, form that defendant was mistaken or misleading in testifying that he reported the number to Huirochea. Further, the court could credit Fields's testimony that, on June 29, 2022, defendant told him that he reported the 7361 cell number only to his "PO" (probation or parole officer) and never said that he reported the new number to anyone in the Sheriff's Office. Based on defendant's admission, the court could

discredit his testimony that he did tell Huirochea of the 7361 cell number. In short, defendant's argument is merely a request that we reweigh the conflicting evidence. Of course, we decline.

¶ 42    Second, and more important, even if it had credited the testimony, the court could still properly find that defendant did not fulfill his obligation under the Act. The Act requires that defendant "*shall* report in person, to the law enforcement agency with whom he or she last registered," his new cell number. 730 ILCS 150/7 (West 2002). Defendant reviewed and signed an update form that did not list the 7361 cell number, attesting that the information was complete and accurate—which it was not. Therefore, he failed in his obligation to report the required information.

¶ 43    Defendant makes no other challenges to the sufficiency of the evidence, so we reject his argument that he was not proved guilty beyond a reasonable doubt.

¶ 44    We turn to defendant's remaining argument. He asserts that, in cross-examining him, the State improperly shifted the burden of proof by questioning him as to whether he ever told Fields that he had reported the 7361 cell number to the Sheriff's Office. Therefore, he contends, the trial court abused its discretion by overruling his objection to the questioning.

¶ 45    The State contends initially that defendant forfeited this issue by failing to raise it in his posttrial motion. However, the posttrial motion squarely raised the claim of error.

¶ 46    In any event, the claim lacks merit. A trial court's evidentiary ruling must be upheld unless the court abused its discretion. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 61. Although the prosecution may not shift the burden of proof to the defendant by implying that he has the obligation to produce evidence to create a reasonable doubt of guilt (*id.* ¶ 62), a defendant may not ordinarily claim error where the prosecution's questioning is in response to issues or evidence

raised by the defendant's testimony on direct examination. *Id.* ¶¶ 63-65; see *People v. Patterson*, 217 Ill. 2d 407, 445-46 (2005).

¶ 47    Here, the cross-examination of which defendant complains simply responded to defendant's testimony that, on May 10, 2021, he went to the Sheriff's Office and reported the 7361 cell number to Huirochea. On cross-examination, the State sought to undermine this testimony by establishing that defendant never told Fields that he had reported the new number to anyone at the Sheriff's Office (including Huirochea). The questioning was relevant to defendant's credibility; the trial court could reason that, if defendant really had disclosed the number to Huirochea, he would have told Fields about it.

¶ 48    Moreover, any error was harmless. First, the evidence of defendant's guilt was not closely balanced. There was essentially no contest over whether he timely disclosed the 7361 cell number on any official form; the forms in evidence proved that he did not. Because knowledge was not an element of the offense, defendant's defense was reduced to his testimony that he once told Huirochea the new number. Even if credited, this was no defense, for the reasons given by the trial court and this court. Thus, the cross-examination could not reasonably have affected the outcome of the trial.

¶ 49    Second, the prejudice from the questioning is doubtful at best. Even without the allegedly improper cross-examination, there was no evidence from which the trial court could have inferred that defendant told Fields that he had disclosed the 7361 cell number to the Sheriff's Office. Fields testified, without objection, that defendant told him that he had reported the new number only to his "PO"—clearly not an agent of the Sheriff's Office. Fields also testified, without objection, that defendant never told him that he had reported the new number to the Sheriff's Office. Thus, the cross-examination produced evidence that was, at worst, redundant.

¶ 50    As defendant's claims of error have no merit, the judgment must be affirmed.

¶ 51                                III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 53    Affirmed.